152 N.J. Super. 471 (1977)
378 A.2d 53
CHARLES ARCELL ET AL., PLAINTIFFS,
v.
ASHLAND CHEMICAL CO., INC., ET AL., DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
AMERICAN CAN COMPANY ET AL., THIRD-PARTY DEFENDANTS. GEORGE WARBECK ET AL., PLAINTIFFS,
v.
ASHLAND CHEMICAL CO., INC., ET AL., DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
AMERICAN CAN COMPANY ET AL., THIRD-PARTY DEFENDANTS. ALBERT MURPH ET AL., PLAINTIFFS,
v.
ASHLAND CHEMICAL CO., INC., ET AL., DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
AMERICAN CAN COMPANY ET AL., THIRD-PARTY DEFENDANTS. CHARLES ARCELL ET AL., PLAINTIFFS,
v.
COLGATE PALMOLIVE CORP. ET AL., DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
AMERICAN CAN COMPANY ET AL., THIRD-PARTY DEFENDANTS. ELEANOR M. BERGER, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF EDWARD BERGER DECEASED, PLAINTIFF,
v.
DEWEY & ALMY CHEMICAL DIVISION, W.R. GRACE CO. ET AL., DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
AMERICAN CAN COMPANY ET AL., THIRD-PARTY DEFENDANTS. EDWARD WILCZEK ET AL., PLAINTIFFS,
v.
UNION CARBIDE CORP. ET AL., DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
AMERICAN CAN COMPANY ET AL., THIRD-PARTY DEFENDANT. VERA DIANA ET AL., PLAINTIFFS,
v.
UNION CARBIDE CORP. ET AL., DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
AMERICAN CAN COMPANY ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 14, 1977.
*479 Messrs. Mendel White and George M. Kachmar for plaintiffs Arcell et al. (Messrs. Guarini & Guarini, attorneys).
Mr. Daniel Herman for plaintiff Berger (Messrs. Kohn, Soperstein & Needle, attorneys).
Mr. William B. McGuire for defendants and third-party plaintiffs PPG Industries, Inc. and Radiation Polymer Co.; lead counsel for all defendants except Manufacturing Chemist Assoc., and M & T Chemicals, Inc. (Messrs. Lum, Biunno & Tompkins, attorneys).
Mr. George L. Benninger for defendant and third-party plaintiff Skelly Oil, Inc.; associate lead counsel for all defendants except Manufacturing Chemists Assoc., and M & T Chemicals, Inc. (Messrs. Schumann, Hession, Kennelly & Dorment, attorneys).
Mr. Frank L. Bate for defendant and third-party plaintiff Manufacturing Chemists Assoc. (Messrs. Shanley & Fisher, attorneys).
*480 Mr. Clyde A. Szuch for third-party defendant and fourth-party plaintiff American Can Co. (Messrs. Pitney, Hardin & Kipp, attorneys).
Mr. Joseph F. Kelly, Jr., for fourth-party defendant E.I. DuPont de Nemours & Co. (Messrs. Townley & Updike and McElroy, Connell, Foley & Geiser, attorneys).
Mr. Bernard T. Hein (Messrs. Hein, Smith & Berezin, attorneys) and Mr. William John Schmelz (Messrs. Lowenstein, Sandler, Brochin, Kohn & Fisher, attorneys) for defendant and third-party plaintiff M & T Chemicals, Inc.
Messrs. Schwartz & Andolino for defendant and third-party plaintiff Inmont Corp.
Mr. Kenneth von Schaumburg for defendant and third-party plaintiff Sun Chemical Co. and General Printing Ink (Messrs. Moser, Roveto, McGough & von Schaumburg, attorneys).
Mr. Martin B. Wallerstein for defendant and third-party plaintiff Ashland Chemical Co. (Messrs. Morgan, Melhuish, Monaghan & Spielvogel, attorneys).
Ms. Amy R. Piro for defendant and third-party plaintiff Glidden-Durkee Division of SCM Corp. (Messrs. Young, Rose and Millspaugh, attorneys).
Mr. Donald Zarin for defendant and third-party plaintiff Texaco, Inc. (Messrs. Sills, Beck, Cummis, Radin & Tischman, attorneys).
Mr. Donald R. Thorsen for defendant and third-party plaintiff Eastman Chemical Products Inc. (Messrs. Hansen, Pantages, Seller & Zavetsky, attorneys).
*481 Mr. Melvin S. Whitken for defendant and third-party plaintiff Dewey & Almy Chemical Division of W.R. Grace Co. (Messrs. Gorrin & Ironson, attorneys).
Mr. Kenneth J. Doukes, Jr., for defendant and third-party plaintiff Vita Var Division of Textron, Inc. (Messrs. Cohen, Hoagland, Keefe & Oropollo, attorneys).
Mr. Frederick L. Heissenbuttel for defendant and third-party plaintiff Union Carbide Corp. (Messrs. DeYoe, Guiney & Raziano, attorneys).
TARLETON, J.S.C.
In these seven products liability cases, third-party defendant and fourth-party plaintiff American Can has renewed its motion for dismissal of the third-party complaints and has moved for dismissal of fourth-party defendant DuPont's counterclaim for express indemnification.
Plaintiffs are present or former employees of American Can who worked at various New Jersey locations between 1969 and 1975. They name as defendants various manufacturers or suppliers of chemicals delivered to American Can for use in its manufacturing operation, and the Manufacturing Chemists Association (MCA), a company engaged in standardizing labeling requirements for chemicals intended for industrial use. The complaints are based upon negligence, strict liability and breach of warranty. Plaintiffs allege that they were exposed to poisonous fumes and vapors causing severe personal injuries or death for which they seek damages.
In Arcell[1] 703 plaintiffs sue 32 defendants; in Kurela/Warbeck 136 plaintiffs sue 32 defendants; in Berger plaintiff sues 32 defendants; in Diana 59 plaintiffs sue 32 defendants, and in Wilczek 52 plaintiffs sue 32 defendants. *482 Diana and Wilczek have been stayed until further order of the court. American Can is a third-party defendant in the seven cases and has fourth-partied DuPont seeking indemnification and contribution.
In a letter opinion of January 14, 1976 American Can's original motion to dismiss the third-party complaints under R. 4:6-2(e) in the Arcell and Kurela/Warbeck actions was denied without prejudice pending completion of discovery. Orders were entered on January 23, 1976; American Can's motions for leave to appeal were denied by the Appellate Division on March 30, 1976 and the Supreme Court on May 18, 1976. American Can renews its motion to dismiss the third-party complaints, relying on recent decisional authority that it contends precludes its continued participation as a third-party defendant for contribution or indemnification. It also seeks to dismiss DuPont's counterclaim for express indemnification.
The third-party complaints seek contribution under the New Jersey Joint Tortfeasors Act, N.J.S.A. 2A:53A-1, and the Comparative Negligence Act, N.J.S.A. 2A:15-1; common law indemnification; a declaration that the Joint Tortfeasors Act, the Comparative Negligence Act and the exclusive remedy provision of the Workers' Compensation Act, N.J.S.A. 34:15-8, are unconstitutional; and orders under R. 4:18-1(c) permitting inspection of American Can's plants, the production of documents, use of interrogatories, requests for admissions and depositions. DuPont seeks express indemnification based upon language appearing in its invoices of products shipped to American Can.
In resisting American Can's motions defendants marshall the following arguments: American Can breached a duty owed them to use the chemicals in accordance with the warnings and instructions supplied to it in light of its detailed knowledge of the particular environment in which the chemicals were to be used; the products furnished were mixed and combined by American Can for particular commercial and industrial processes in a manner not reasonably *483 foreseeable by defendants; American Can did not independently test and analyze the properties and characteristics of the supplied chemical combinations and did not implement appropriate precautions and safeguards; American Can was aware of the hazards associated with the use of the chemicals supplied from its own experience, from its own environmental tests and from tests conducted by state and federal agencies; American Can negotiated with representatives of plaintiffs' union and representatives of various government organizations to allow it to ignore or delay implementation of health and safety measures.
Defendants further rely upon the existence of a "special legal relationship" to claim indemnification and cite prematurity and incomplete discovery as additional reasons mandating denial of American Can's renewed motion.

CONTRIBUTION
Defendants project three arguments in support of their contribution claim against American Can. First, they argue that Farren v. New Jersey Turnpike Auth., 31 N.J. Super. 356 (App. Div. 1954), has been impliedly overruled by the Comparative Negligence Act. If their contribution argument should fail, defendants urge that American Can remain in the case on the authority of Connar v. West Shore Equipment of Milwaukee, 68 Wis.2d 42, 227 N.W.2d 660 (Sup. Ct. 1975). Lastly, they seek the benefit of the "Murray Credit" doctrine as reported in Murray v. United States, 132 U.S. App. D.C. 91, 405 F.2d 1361 (D.C. Cir.1968).
Farren held that a tortfeasor may not obtain contribution from an employer subject to the Workers' Compensation Act. Since an employer covered by the Compensation Act is not liable in tort to its employee, the employer is not a "joint tortfeasor" within the meaning of the Contribution Act. Farren, supra, 31 N.J. Super. at 360-361. Public policy as expressed in the Workers' Compensation Act supports this view, for to allow a third party to obtain *484 contribution from an employer would effectively hold the employer liable to the employee for negligence which is expressly prohibited by the Workers' Compensation Act. Adler's Quality Bakery Inc. v. Gasteria, Inc., 32 N.J. 55, 75 (1960). While the wisdom of this rule has been questioned, see, e.g., Mitchell, "Products Liability, Workmen's Compensation and the Industrial Accident," 14 Duquesne L. Rev. 349 (1976), it is the law of our State, and this court is obliged to follow Farren. Franco v. Davis, 51 N.J. 237, 238 (1968).
To support their position that Farren has been impliedly overruled by the adoption of the Comparative Negligence Act, defendants cite N.J.S.A. 2A:15-5.3, which provides in pertinent part:
* * * Any party who is so compelled to pay more than such party's percentage share may seek contribution from the other joint tortfeasors. [Emphasis supplied]
Since the Comparative Negligence Act neither directly refers to the Contribution Act nor expressly adopts that act's definition of "joint tortfeasor," defendants contend that by adopting N.J.S.A. 2A:15-5.3 the Legislature intended to overrule Farren and allow a third party to obtain "comparative contribution" from an employer. I disagree.
It is firmly established that statutes in pari materia must be construed with reference to each other because "it is assumed that whenever the Legislature enacts a provision it has in mind previous statutes relating to the same subject matter." 2A Sutherland, Statutes and Statutory Construction (4 ed. Sands, 1972), § 51.02 at 290. While this rule of construction is usually applied when statutes were enacted or became effective at the same time, it may be appropriately applied when the statutes were adopted at different times and make no reference to each other. Mimkon v. Ford, 66 N.J. 426, 434 (1975). The essential inquiry is whether *485 the statutes have the same purpose or object. State v. DiCarlo, 67 N.J. 321, 325 (1975).
The purpose of the Contribution Act is to achieve a "sharing of the common responsibility according to equity and natural justice." Sattelberger v. Telep, 14 N.J. 353, 367-368 (1954). The same purpose is evident in N.J.S.A. 2A:15-5.3. The only difference is that the Comparative Negligence Act modified the Contribution Act by making the quantum of contribution dependent upon the percentage of negligence rather than the number of defendants. See Iavicoli, No. Fault and Comparative Negligence in New Jersey, 182-183 (1973).
I conclude that the term "joint tortfeasor" in the Comparative Negligence Act should be construed in light of the definition provided in the Contribution Act and as interpreted by Farren. Since there is nothing in the Comparative Negligence Act to indicate a legislative intent to change the meaning of "joint tortfeasor" as it appears in the Contribution Act and as interpreted by Farren, I find no justification for ascribing a different meaning to that term. Cf., General Electric Corp. v. E. Fred Sulzer & Co., 86 N.J. Super. 520, 532 (Law Div. 1965), aff'd 92 N.J. Super. 210 (App. Div. 1966). Rogers v. Spady, 147 N.J. Super. 274 (App. Div. 1977) does not require otherwise. It held that a defendant found 100% negligent was not entitled to a pro tanto reduction under the Comparative Negligence Act where a codefendant who had settled was found 0% negligent. For these reasons I reject defendants' claims for contribution.
Additionally, I find no sound reason to keep American Can in these cases as a third-party defendant. The Comparative Negligence Act does not require it and none of the cases cited by defendants so hold. In Connar, supra, the Supreme Court of Wisconsin held that the employer's negligence must be considered by a jury under that state's Comparative Negligence Act to properly determine the percentage of defendant's negligence. Also see Payne v. Bilco Co., 54 Wis.2d 424, *486 195 N.W.2d 641 (Sup. Ct. 1972); Heldt v. Nicholson Mfg. Co., 72 Wis.2d 110, 240 N.W.2d 154 (Sup. Ct. 1976). However, the employer was not a party in any of these cases. In Heldt the court even commented that the employer "had not been joined as a defendant and could not be, for its only liability to the employee, Heldt, was for workmen's compensation." 240 N.W.2d at 157.
I therefore conclude there is no merit to defendants' contention that American Can must remain in the case to determine the percentage of negligence attributable to it, assuming without deciding that the Connar rule should be adopted in New Jersey.
Defendants' final argument in this area is that the Worker's Compensation Act represents nothing more than a settlement between the employee and employer, see Holt v. Ferdon Equipment Co., 72 F.R.D. 564, 571-572 (D.N.J. 1976), and should be "treated like any other settlement between an injured party and a joint wrongdoer." Defendants assert they are entitled to a pro rata reduction of their liability if American Can should be found negligent.
This view, known as the "Murray Credit," was adopted by the court in Murray v. United States, supra. Also see Dawson v. Contractors Transport Corp., 151 U.S. App. D.C. 401, 467 F. 2d 727 (D.C. Cir.1972); Marant v. Farrell Lines, 550 F.2d 142 (3 Cir.1977). It has been characterized as "one more way of trying to find a compromise between the evenly balanced interests of the third party, the employer, and the employee." 2 Larson, Workmen's Compensation Law, § 76.22 at 14-315 (1976). The "Murray Credit" has not gone without criticism. 2 Larson, op. cit., § 76.22 at 14-316; also see Lucas v. Brinknes Schiffahrts Ges., 379 F. Supp. 759, 764 (E.D. Pa. 1974).
I find there are significant differences between these two situations. In those states where the worker's compensation act is mandatory an employee, unlike a settling tortfeasor, does not have any choice in accepting the "settlement" embodied in the workmen's compensation act. In this situation *487 the employee's recovery against the third party is not reduced by the employee's own conscious decision made with full knowledge of the consequences; it is mandated by law. See 2 Larson, supra, § 76.22 at 14-317. This distinction may be of lesser significance in New Jersey where the worker's compensation provisions are "elective." Nevertheless, we cannot overlook that every employment contract is "presumed to have been made with reference to the provisions" of the Worker's Compensation Act in the absence of an "express statement in writing prior to any accident" which demonstrates a contrary intent. N.J.S.A. 34:15-9.
Consequently, the compensation scheme enters by operation of law into every contract of hiring made in New Jersey unless there is an affirmative rejection in accordance with the statute. Gotkin v. Weinberg, 2 N.J. 305, 308 (1949); Estelle v. Red Bank Bd. of Ed., 14 N.J. 256, 260 (1954); Rivera v. Green Giant Co., 93 N.J. Super. 6, 11 (App. Div. 1966), aff'd o.b. 50 N.J. 284 (1967). Therefore, the parties "by mere inaction" agree to to the payment of compensation and it is clear that the adoption of the compensation scheme does not necessarily depend on the mutual assent of the parties. The "reality of consent is not an indispensable element, although it may exist in the individual case, for [the statute] is applicable even though the parties did not know of the existence of the statute, or, knowing, did not in fact have it in view." Miller v. Nat'l Chair Co., 127 N.J.L. 414, 418 (Sup. Ct. 1941), aff'd o.b. 129 N.J.L. 98 (E. & A. 1942); Dunleavy v. Tietjen & Lang Dry Docks, 17 N.J. Super. 76, 81 (Cty. Ct. 1951), aff'd o.b. 20 N.J. Super. 486 (App. Div. 1952).
Accordingly, the "settlement" which arises from the Workers' Compensation Act differs from a settlement arrived at between an injured party and a tortfeasor. The practical effect is that the employee is held to compensation payments even though he may never have contemplated it at the time that he entered into the contract of employment.
*488 There is another difference of greater significance. The employer or its insurance carrier's reimbursement rights will often further reduce the injured employee's recovery. Thus an employee-plaintiff's recovery may be less than that of an ordinary plaintiff who settles with a joint tortfeasor. 2 Larson, op. cit., § 76.22 at 14-318 to 14-319. The effect of the "Murray Credit," then, is not to equitably adjust the rights of the parties involved in an employment-related injury on the contrary, it merely shifts any inequity in the present system from the shoulders of the third-party tortfeasor to those of the injured employee. This was precisely why the Ninth Circuit rejected the "Murray Credit" in Dodge v. Mitsui Shintaki Ginko K.K. Toyko, 528 F.2d 669 (1975), cert. den. 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976), and Shellman v. United States Lines Inc., 528 F.2d 675 (1975), cert. den. 425 U.S. 936, 96 S.Ct. 1668, 48 L.Ed.2d 177 (1976). See also, Turner v. Excavation Construction, Inc., 324 F. Supp. 704 (D.D.C. 1971).
A more persuasive argument could be presented for adoption of the "Murray Credit" if an employer found to be negligent was not entitled to reimbursement. This result, however, would run counter to Schweizer v. Elox Div. of Colt Industries, 70 N.J. 280 (1976). See Turner v. Excavation Construction, Inc., supra.
In view of the foregoing, I conclude that the "Murray Credit" does not represent the New Jersey view and its adoption would impermissibly undercut the Workers' Compensation Act and Schweizer.

IMPLIED INDEMNIFICATION
In New Jersey, as in the majority of jurisdictions, a third party is not entitled to implied indemnification from an employer. Public Service Elec. & Gas Co. v. Waldroup, 38 N.J. Super. 419 (App. Div. 1955); Slattery v. Marra Bros., 186 F. 2d 134 (2 Cir.1951); Bertone v. Turco Products, Inc., 252 F. 2d 726 (3 Cir.1958); see generally, 2 *489 Larson, op. cit., §§ 76.42-76.44. One recognized exception to this rule appears where there is a "special legal relationship." Hagen v. Koerner, 64 N.J. Super. 580 (App. Div. 1960); Ruvolo v. U.S. Steel, 133 N.J. Super. 362 (Law Div. 1975) (Ruvolo I); but see, Ruvolo v. U.S. Steel, 139 N.J. Super. 578 (Law Div. 1976) (Ruvolo II).
The rationale for this rule is that in the absence of a special legal relationship a claim for implied indemnification is necessarily based on the theory that both parties are jointly liable for the injury, with the employer's negligence being greater in degree or more culpable than that of the third party. However, recovery on such a theory is contrary to the exclusivity provision of the Workers' Compensation Act since it would amount to holding the employer liable to the employee on account of the employer's negligence. See Public Service Electric & Gas Co. v. Waldroup, 38 N.J. Super. at 437; 2 Larson, op. cit., § 76.44. By virtue of the immunity furnished the employer under the Workers' Compensation Act, an employer is not jointly liable with the third party to the employee. As a consequence, a third party is barred from indemnification where the claim is based upon the employer's joint liability to the employee. Slattery v. Marra Bros, supra, 186 F.2d at 139; Public Service Electric & Gas Co., supra.
Moreover, since Slattery and Waldroup were decided the so-called "active-passive" rule has been rejected in New Jersey as a basis for implied indemnification. Adler's Quality Bakery Inc. v. Gasteria, Inc., supra, 32 N.J. at 81. To recover on this theory the indemnitee's liability must be secondary and not primary; that is, it must be imputed, vicarious or constructive, and a party must be without personal fault before indemnity will lie. Id. at 79-80; Schramm v. Arsenal Esso Station, 124 N.J. Super. 135, 138 (App. Div. 1973), aff'd o.b. 63 N.J. 593 (1973).
The viability of the third-party complaints must be assessed in light of these principles. In doing so I am mindful that the factual allegations in the complaints must be *490 taken as true and defendants must be afforded the benefit of all legitimate inferences which may be drawn therefrom. P & J Auto Body v. Miller, 72 N.J. Super. 207, 211-212 (App. Div. 1962); Hirsch v. Travelers Ins. Co., 134 N.J. Super. 466, 469 (App. Div. 1975).
The majority of decisions dealing with the question hold that a negligent manufacturer cannot obtain indemnification from a purchaser whose negligent conduct played a role in causing an injury, because the manufacturer and purchaser are in pari delicto; both are primarily liable. See generally, 3A Frummer & Friedman, Products Liability, ¶ 44.02[3] [d] at 15-30 to 15-31; Annotation, "Products Liability: Right of Manufacturer or Seller to Contribution or Indemnity From User of Product Causing Injury or Damage to Third Person, and Vice Versa." 28 A.L.R.3d 943 (1969).
This rule has often been invoked where the employer purchases a product. In denying indemnification to the manufacturer the courts have reasoned that if the manufacturer is liable it is because of its fault in the design or manufacture of the product. While the employer's fault may provide a valid defense for the manufacturer, as in the case of misuse or substantial alteration, this fault is not imputed to the manufacturer to render it liable to the injured party. Even states applying the "active-passive" rule have reached the same result on the theory that negligent design or manufacture of a product is active negligence. The fact that the manufacturer and employer may have entered into a sales contract is not sufficient to establish that type of relationship from which an implied obligation to indemnify the third party may arise. See 2 Larson, op. cit., § 76.44 at 14-402 and at 14-404 and 14-405.
The parties have cited and discussed numerous cases dealing with this question in their extensive briefs. See, e.g., McClish v. Niagara Machine & Tool Works, 266 F. Supp. 987 (S.D. Ind. 1967); Santiseven v. Dow Chemical Co., 506 F.2d 1216 (9 Cir.1974); Minster Machine Co. v. Diamond Stamping Co., 72 Mich. App. 58, 248 N.W.2d 676 (App. *491 Ct. 1976); Diekevers v. Brekel, Inc., 73 Mich. App. 78, 250 N.W.2d 548 (App. Ct. 1976); Prosky v. Nat'l Acme Co., 404 F. Supp. 852 (E.D. Mich. 1975); Saad v. John E. Smith's Sons Co., 399 F. Supp. 523 (E.D. Mich. 1975); Sherman v. Concrete Pipe Machinery Inc. v. Gadsen Concrete & Metal Pipe Co., Inc., 335 So.2d 125 (Ala. Sup. Ct. 1976).
Little purpose would be served here by undertaking an in-depth review of these cases. In my view two cases are particularly persuasive: William H. Field Co., Inc. v. Nuroco Woodwork, Inc., 115 N.H. 632, 348 A.2d 716 (Sup. Ct. 1975), and Stevens v. Silver Manufacturing Co., 41 Ill. App.3d 483, 355 N.E.2d 145 (1976). In Field an employee was injured while working with a band saw. The manufacturer and distributor sought indemnification from the employer, contending that the employer's negligence was either the sole or primary cause of the accident and that the employers negligence was gross and wanton in comparison to theirs. The manufacturer and distributor alleged that the employer damaged the guard on the saw, failed to obtain a replacement, made ineffective repairs and operated the saw without a guard after a second break in it. The Supreme Court of New Hampshire held that the employers motion to dismiss should be granted and no basis for indemnification existed. It found that "[n]o duty flows upstream from the purchaser to the manufacturer" as to the manner in which a product is to be used, and while misuse of a product may be a defense, "nothing [the employer] did or failed to do could impose any constructive or derivative liability on [the manufacturer or distributor]. Their liability to [the employee], if any, is primary." Id. 348 A.2d at 718.
In Stevens plaintiff employee was mentally retarded and physically handicapped. He settled with the manufacturer and dealer of a shredding machine after bringing an action against them based on negligence and strict liability. The manufacturer and distributor then sought indemnification *492 from the employer on grounds of negligence or recklessness in failing to supervise or instruct in the use of the machine, removal of safety devices and allowing hazardous work practices and handicapped persons to operate the machine. On appeal the trial court's denial of the employer's motion to dismiss was reversed. Indemnification was denied because there was no relationship or circumstance giving rise to derivative or vicarious liability. The court held that the employer breached no duty owed to the manufacturer or seller. If any duty was breached by the employer it was the duty owed to the employee. Id. 355 N.E.2d at 151.
There are cases which take a different view and hold that the relationship between a manufacturer and employer-purchaser is a sufficient basis for a claim of implied indemnification. See United States Fid. & Guar. Co. v. Kaiser Gypsum Co., Inc., 539 P.2d 1065 (Or. Sup. Ct. 1975); Harn v. Standard Engineering Co., 416 F. Supp. 1168 (D.S.D. 1976); Holt v. Ferdon Equip. Co., supra. These cases rely primarily on the theory that the employer owed the third party a duty to use its products in a proper manner. In my view these cases overlook two critical factors: first, the duty to use a third party's product to avoid unreasonable risks of harm is owed to the employee, not the third party; second, the third party's liability is not contingent upon the conduct of the employer but is founded upon the third party's own conduct. I find the cases adopting this view unpersuasive and not reflective of the New Jersey position.
I conclude that defendants who manufactured or supplied products or promulgated labeling requirements do not stand in that type of special legal relationship to American Can so as to entitle them to indemnification. Defendants owed a duty to plaintiffs to take reasonable measures to adequately warn them of any latent defects in their products. Roberts v. United States, 316 F.2d 489 (3 Cir.1963); Dougherty v. Hooker Chemical Corp., 540 F.2d 174 (3 Cir.1976); Restatement, Torts 2d, § 388. Any liability on their *493 part will depend upon whether they breached this duty and whether any such breach was a proximate cause of plaintiffs' injuries. Defendants will not be held accountable for anything American Can did or did not do. Defendants' liability, if any, cannot be viewed as constructive, vicarious or imputive. It is primary and they will be held responsible only for their own conduct. Their allegations of various derelictions by American Can may well provide them with a defense, but these allegations cannot serve as a basis for a claim of indemnification. If defendants are found without fault, they will also be without liability.
Unlike the other defendants, MCA's liability is not predicated upon its having supplied American Can with products without adequate warning. Plaintiffs seek to hold MCA liable on the theory that it improperly adopted labeling standards. MCA is in no better or worse position than the other defendants. It can only be held responsible for its own conduct and not that of American Can.
Several defendants have argued that they should be viewed as being in a "special legal relationship" with American Can because there is a possibility that they may be liable in strict liability but found to be free from any negligence. This claim was rejected in Ruvolo II supra, 139 N.J. Super. at 584-585; see also, Stevens v. Silver Mfg. Co., supra, 41 Ill. App.3d 483, 355 N.E.2d at 152-153. I am in accord with the views expressed in Ruvolo II and Stevens. If defendants are found liable in strict liability, it will be because of their conduct in manufacturing or distributing a defective product, Stevens, supra at 152, and if this is so, they are not without fault. Ruvolo II, supra; also see, Casrell v. Altec Industries, Inc., 335 So.2d 128, 132 (Ala. Sup. Ct. 1976).
Defendants' reliance on Adler's Quality Bakery Inc. v. Gasteria, Inc., supra, is misplaced. Adler held that an aircraft owner liable under N.J.S.A. 6:2-7 could seek indemnity from another who contributed to the ground damage because the aircraft owner was liable without fault under *494 the statute. The statute made an aircraft owner an insurer for any ground damage caused by the aircraft. To recover under the statute plaintiff was merely required to show operation of the aircraft and a causal relationship between that operation and the damage. In contrast, strict liability does not make a manufacturer or supplier an insurer of its product's safety. Cepeda v. Cumberland Engineering Co., 138 N.J. Super. 344, 356 (App. Div. 1976), certif. granted 70 N.J. 274 (1976). To recover under strict liability plaintiff must establish a defect while in defendant's control and a causal relation to the injuries.
Defendant DeSoto contends that its relationship with American Can "is not susceptible of precise characterization," but suggests that "it nevertheless partakes of many attributes of agency." More particularly, DeSoto alleges that American Can "solicited" information concerning various warnings and instructions from it. Because of this, DeSoto contends that American Can "impliedly warranted that it would use the products in a safe and proper manner in conformity with the information imparted to it and to convey necessary warnings to its employees."
I find no agency relationship. A necessary element of any agency relationship is the right of the principal to control the conduct of the agent. Restatement, Agency 2d, § 1 and comment (a) thereto. "The right of the principal to direct what the agent shall do or shall not do is basic." Seavey, Agency, § 3 at 5 (1964). That DeSoto, at American Can's request, transferred to American Can warnings and instructions fails to indicate or raise any inference that DeSoto had the authority to control American Can's conduct with respect to the use of the instructions and warnings. Furthermore, as previously stated, DeSoto's liability will depend not on what American Can did, but on what DeSoto did. DeSoto was bound to take reasonable measures to insure that the warnings were made known to American Can's employees. By giving the warnings to American Can, DeSoto may have discharged its duty. See *495 Younger v. Dow, 202 Kan. 674, 451 P.2d 177 (Sup. Ct. 1969); compare Dougherty v. Hooker Chemical Corp., supra, 540 F.2d 174. Thus, DeSoto's liability will not hinge on whether or not American Can conveyed the warnings, but whether DeSoto acted reasonably in relying on American Can to do so. See comment (n) to § 388 of Restatement, Torts 2d.
Various defendants have raised arguments in support of their claims for indemnification which do not depend on the existence of "a special relationship." PPG asserts that since in certain cases a common law action has been allowed against an employer's insurance carrier, its claims against American Can are sufficient because it is self-insured, citing Rothfuss v. Bakers Mutual Ins. Co., 107 N.J. Super. 189 (App. Div. 1969); Mager v. United Hospitals of Newark, 88 N.J. Super. 421 (App. Div. 1965), aff'd o.b. 46 N.J. 398 (1966), and Viducich v. Greater N.Y. Mut. Ins. Co., 80 N.J. Super. 15 (App. Div. 1963), certif. den. 41 N.J. 129 (1963). I find this position to be without merit. American Can's liability to pay compensation benefits to plaintiffs for injuries suffered at its plant represents the full extent of its liability to plaintiffs under the Workers' Compensation Act. The logical result of PPG's position is that plaintiffs can recover twice from American Can, once under the act since American Can is an employer, and again at law since American Can is a self-insurer. Clearly, this was not the intent of the act. Here there was no "independent undertaking" by American Can which was not covered by the act, as in Rothfuss and Mager. Viducich is inapposite.
PPG also contends that its allegations that American Can wilfully and wantonly failed to undertake known safety and health procedures for the protection of plaintiffs and wilfully and wantonly negotiated with representatives of plaintiffs and various governmental bodies to allow it to ignore or delay implementation of health and safety measures state a claim for relief since the Workers' *496 Compensation Act does not apply to intentional wrongs. N.J.S.A. 34:15-8. Accepting these allegations as true, PPG still would not be entitled to recover. See 2 Larson, op. cit., § 68.13 at 13-8. Cf. Bryan v. Jeffers, 103 N.J. Super. 522, 523 (App. Div. 1968), certif. den. 53 N.J. 581 (1969), where the court noted that the words "intentional wrong" in N.J.S.A. 34:15-8 were intended "to have their commonly understood signification of deliberate intention." See also, Ulicny v. National Dust Collector Corp., 391 F. Supp. 1265 (E.D. Pa. 1975).
Defendants' allegations of American Can's "recklessness" as furnishing a base for indemnification are without merit. See e.g., Stevens v. Silver Mfg. Co., supra, 41 Ill. App.3d 483, 355 N.E.2d at 152; Grove Mfg. Co. v. Cardinal Const. Co., 534 S.W.2d 153 (Tex. Civ. App. 1976). Moreover, even outside the workers' compensation area, indemnification based upon the indemnitor's reckless conduct has been almost universally disallowed. Prosser, Torts (4 ed. 1972), § 52 at 312-313.
Despite the language in Adler's Quality Bakery Inc. v. Gasteria Inc., supra, 32 N.J. at 79-80, and Schramm v. Arsenal Esso Station, supra, 124 N.J. Super. at 138, indicating "that a party seeking common law indemnification from another must be without personal fault," MCA argues that a negligent party may still be entitled to indemnification in certain circumstances. In support of its position MCA points to §§ 94, 95 and 97 of the Restatement, Restitution, and maintains that they are applicable to the present case.
Assuming arguendo that New Jersey would allow indemnification based on these sections of the Restatement, I conclude that they are inapplicable in this case. § 95 applies where, because of the relationship of two parties, one is under a duty to protect the other from harm. Examples given under comment (a) are "trustee, agent, bailee or other fiduciary [and] a carrier who is under a duty to protect passengers *497 from assault of others." No such relationship exists in these cases.
On its face § 95 is inapplicable. In these cases the dangerous condition of the products furnished by defendants was not created by American Can but by defendants themselves. Moreover, as between American Can and defendants, it was defendants' duty to make the products reasonably safe.
§ 97 is inapposite. For it to apply the parties must both be "liable in tort," which is not the case in New Jersey because of Farren. Even if MCA's argument that the concept of joint liability is "anachronistic" were adopted, indemnification still would not lie under § 97 because the employer's liability is based upon a breach of duty owed to its employees rather than on the basis of a "special legal relationship" between the employer and the third party. The same may be said about MCA's reliance upon §§ 94 and 95 of the Restatement, Restitution.
Finally, defendants urge the adoption of the New York Court of Appeals approach in Dole v. Dow Chemical Co., 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972). Dole does not represent the law of New Jersey and I decline to follow it.
For the reasons stated, defendants are not entitled to recover implied indemnification from American Can.

CONSTITUTIONAL ISSUES
Defendants have mounted a three-pronged constitutional attack on the effect of rulings denying them contribution, implied indemnification or benefit of the "Murray Credit." They argue that this result is unreasonable and arbitrary, amounting to a denial of equal protection and substantive due process. Defendants further maintain that they are denied procedural due process because their rights are affected by an agreement to which they were not a party. Specifically, they point to an employer and employee electing workers' compensation coverage, which procedure does *498 not afford defendants notice of or opportunity to be heard at the workers' compensation hearing.

EQUAL PROTECTION
It is well settled that unless a statute infringes on a fundamental right or operates to the disadvantage of a suspect class, the "traditional" or "rational basis" test will be applied in assessing the validity of a statute. E.g., Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 311, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976); San Antonio Indep. School Dist. v. Rodriquez, 411 U.S. 1, 16-17, 93 S.Ct. 1278, 36 L.Ed. 2d 16 (1973). All parties agree that no fundamental right or suspect classification is involved here; therefore, the "rational basis" test must be applied. Thus, the "crucial question" is whether an appropriate governmental interest is suitably furthered by the difference in treatment, Police Dept. of City of Chicago v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972), or, stated differently, whether the classification presented by this case is reasonable, and not arbitrary, bearing a substantial relation to a valid legislative object. Reed v. Reed, 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).
It has recently been said that this "traditional" or "rational basis" test is a "relatively relaxed standard" which reflects the courts' awareness that the drawing of lines which create distinctions is peculiarly a legislative function. Murgia, supra, 427 U.S. 307, 96 S.Ct. at 2567. Accordingly, a party assailing a statute on the ground that it affects an impermissible classification has the burden of overcoming a presumption of the statute's validity and demonstrating that the classification is "patently arbitrary" or "wholly irrelevant" to the achievement of a valid state objective. See Fronterio v. Richardson, 411 U.S. 677, 683, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); Turner v. Fouche, 396 U.S. 346, 362, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); *499 McDonald v. Bd. of Election Com'rs of Chicago, 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed. 2d 491 (1970); McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).
In applying this standard a court must consider the facts and circumstances behind the challenged law as well as the interest which the state claims to be advancing and the interests of those who assert they are adversely affected by the law. Williams v. Rhodes, 393 U.S. 23, 30, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); Sayler Land Co. v. Tulare Lake Basin Storage Dist., 410 U.S. 719, 725, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973).
The Workers' Compensation Act is social legislation designed primarily to lift from the public the burden of caring for an injured employee by providing speedy, dependable financial assistance to the employee during the period of disability. Naseef v. Cord, Inc., 48 N.J. 317, 323, n. 1, 325 (1966). This result was rarely achieved under the common law system. Most suits were unsuccessful because of the defenses of assumption of the risk, contributory negligency and the fellow servant rule. Even when litigation was successful, there was delay and expense to contend with. Prosser, op. cit., § 80 at 530. Our Legislature, and the legislatures of most states, chose to address this evil by abolishing the employer's common law defenses and making it unnecessary for the employee to prove the employer's negligence. In essence, the employer is absolutely liable to pay statutory benefits to a worker who is injured in the course of his employment. "In return, the employer is assured of a fixed liability which is predictable enough so that he may insure against his probable costs. Litigation is avoided, further lowering the price of accidents to the parties and to society." Galimi v. Jetco, Inc., 514 F.2d 949, 952 (2 Cir.1975).
*500 No one challenges the reasonableness of this system. What defendants contend is that to deny them the relief they seek does not rationally further the goal of the workers' compensation scheme. Furthermore, they argue that by requiring the employer to defend a common law negligence action and to pay contribution if found negligent, employers will be deterred from maintaining their plants in an unsafe condition. They stress that no such deterrent exists in a case such as this because American Can is a self-insured and may obtain reimbursement of its compensation payments from any judgment recovered by plaintiffs.
However, to allow a third party to obtain contribution or indemnification on the theory that the employer is jointly liable with the third party to the employee would clearly frustrate the legislative scheme. The employer's liability would no longer be fixed and predictable. Workers' compensation insurance would increase and there would be as well the probability of increased litigation. Schweizer v. Elox Div. of Colt Industries, supra, 70 N.J. 280, 288, n. 2 (1976). The immunity furnished to employers in return for their absolute liability would no longer exist. While there may be competing policy considerations, such as providing additional incentives to an employer to maintain safe working conditions, which would be furthered by allowing third-party actions against employers, the Legislature has struck the balance in favor of prohibiting such actions. In doing so it cannot be said that the Legislature acted unreasonably or arbitrarily. Moreover, to allow third-party actions against the employer may encourage employers not to participate in the workers' compensation program. See O'Neill v. United States, 450 F.2d 1012, 1018 (3 Cir.1971); Moss v. Swann Oil, Inc., 423 F. Supp. 1280, 1284 (E.D. Pa. 1977).
Denying defendants the benefit of the "Murray Credit" doctrine presents a closer question. Since application of this rule would not require an employer to indirectly pay common law damages to the employee, its adoption would *501 not directly threaten the functioning of the workers' compensation system. But as previously discussed, the "Murray Credit" does place an additional burden on the employee because of the employer's statutory right to reimbursement. This problem, of course, could be circumvented if the statute was interpreted as allowing an employer to obtain reimbursement only where it is free of negligence. However, such an interpretation has recently been rejected by our Supreme Court in Schweizer v. Elox Div. of Colt Industries, supra. Thus, an employee-plaintiff and the ordinary plaintiff stand in quite different positions after the "settling tortfeasor" or "Murray Credit" rule is applied. This difference, in my view, provides a sufficient basis for refusing to apply the "Murray Credit" rule.
Furthermore, even if an employer were denied reimbursement if found negligent, there is still a compelling reason to reject the "Murray Credit" rule. Its adoption would inject the issue of the employer's negligence into every action by an employee against a third party with a resultant increase in both litigation and workmen's compensation insurance. Schweizer v. Elox Div. of Colt Industries, supra, 70 N.J. at 288, n. 2. Additionally, as noted before, the employee usually is bound to accept workers' compensation benefits even though he may have had no real choice in the matter. To reduce the employee's judgment against the third party in this fashion would be unfair and contrary to our law.
For these reasons I find defendants have not been denied equal protection of the law.

SUBSTANTIVE DUE PROCESS
In my view defendants' contention that a denial of the contribution or indemnification relief they seek amounts to a violation of substantive due process meets an insurmountable obstacle. The Due Process Clause by its terms protects only "life, liberty and property." Life and liberty are not involved here. The question then arises of whether defendants *502 are denied "property" within the meaning of the clause. It has been held that the Due Process Clause protects "any significant property interest." E.g., Fuentes v. Shevin, 407 U.S. 67, 86, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). But it has also been held that the clause does not independently create property rights. E.g., Goss v. Lopez, 419 U.S. 565, 572-573, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Rather, only those rights which have already been acquired as a result of existing rules or stem from an independent source such as state law are protected. Id., Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).
The right to contribution did not exist at common law between two parties in pari delicto. E.g., New Amsterdam Cas. Co. v. Popovich, 31 N.J. Super. 514, 519 (App. Div. 1954), aff'd 18 N.J. 218 (1955); Sattelberger v. Telep, supra, 14 N.J. at 366; Manowitz v. Kanov, 107 N.J.L. 523, 525 (E. & A. 1931); Prosser, op. cit., § 50. Consequently, defendants have no right to contribution under state law outside of the Contribution Act, and since that statute does not apply here, they have no property interest upon which to ground a substantive due process argument. See Parker v. Stetson-Ross Machine Co., Inc., 427 F. Supp. 249, 251 (D.S.D. 1977).
The same may be said of defendants' claim for indemnification. Our law has never recognized a right to implied indemnification from an employer in the absence of a "special legal relationship," as in Hagen v. Koerner, supra. Therefore, defendants cannot correctly contend that they are deprived of property within the meaning of the Due Process Clause.
Similarly, because the right to receive a reduction in a judgment where another joint tortfeasor settles with the plaintiff is founded upon the Contribution Act, Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 87-94 (1954), rather than any common law right, defendants lack any cognizable property interest in this respect.
Assuming arguendo that a property interest is involved, I find no substantive due process violation. The standard *503 for evaluating a substantive due process challenge is not unlike the "traditional" or "rational basis" equal protection test. Once again, the determinative factor is whether the legislative measure is reasonable. As stated by the United States Supreme Court in Nebbia v. New York, 291 U.S. 502, 525, 54 S.Ct. 505, 510, 78 L.Ed. 940 (1934), "the guaranty of due process * * * demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained."
In accordance with the views expressed in the portion of this opinion dealing with the equal protection issues, I conclude that the present system meets this criterion.
Carlson v. Smogard, 298 Minn. 362, 215 N.W.2d 615 (Sup. Ct. 1974), and Sunspan Eng. & Const. Co. v. Spring Lock Scaffold Co., 310 So.2d 4 (Fla. Sup. Ct. 1975), relied upon by defendants, are distinguishable. Each dealt with the validity of a state statute which prohibited indemnification from an employer, contrary to prior case law which had allowed a third party indemnification from an employer in certain situations. In contrast, no common law right is abridged by New Jersey law because a third party never had the right to indemnification in the absence of a special legal relationship.
For the reasons stated, I find no violation of substantive due process.

PROCEDURAL DUE PROCESS
Defendants' contentions in this respect meet the same initial barrier as in the substantive due process area. That is, there is no cognizable property interest involved upon which a successful due process challenge can be mounted.
Again, assuming arguendo the existence of a property interest, I find defendants' contentions to be without merit. They argue that because their rights are affected by an agreement between the employer and employee to elect compensation *504 coverage, an agreement to which defendants are not a party, due process is violated. Apparently, it is defendants' position that due process requires that they receive notice and an opportunity to be heard when every employment contract is entered into in this state.
I fail to see how defendants' right to due process is infringed by the agreement of two private persons. Their real grievance is the immunity granted an employer who agrees to be covered by the Compensation Act. But this immunity is ordained by the statute, not by the parties who enter into the employment contract, and the Legislature is not required to give notice and afford an individual an opportunity to be heard before it enacts a statute. See Bi-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S. 441, 445, 36 S.Ct. 141, 60 L.Ed. 372 (1915).
Defendants further assert that they are entitled to notice of and opportunity to be heard at the workers' compensation proceedings. Their theory is that the employer's indemnity, and consequently their right to contribution or indemnity, hinges on the outcome of these hearings because the hearings will determine whether plaintiffs' injuries are within the scope of the Workers' Compensation Act.
This argument ignores the realization that plaintiffs seek to recover for injuries suffered at American Can's plant. Defendants are not barred from proving in this action that the injuries were suffered elsewhere, and thereby avoid liability. Furthermore, a finding that the injuries were not work-related would mean that American Can is not liable to plaintiffs and, a fortiori, defendants could not obtain contribution or indemnification from the employer. Defendants, therefore, could not be adversely affected by the workers' compensation proceedings and I find no violation of procedural due process.
Finally, defendants urge that it is improper to pass on the constitutional issues involved until "a full factual record" is compiled. Yet they have failed to suggest what facts must be developed before these issues can be addressed. In my view, no additional facts are needed to determine the constitutional *505 issues. On the basis of the conclusions reached, defendants cannot obtain contribution or implied indemnification from American Can nor are they entitled to the benefit of the "settling tortfeasor" or the "Murray Credit" rules. There is no need for a "full factual record" before addressing these issues. See Fair Housing Council v. N.J. Real Estate Comm'n, 141 N.J. Super. 334 (App. Div. 1976), certif. den. 71 N.J. 526 (1976).

MCA'S COUNTS FOR DISCOVERY
MCA maintains that at the very least it is entitled to inspect American Can's premises, to inspect and copy documents in American Can's control and to conduct discovery against American Can as if it were "a direct party defendant." American Can responds that MCA has no right to this relief because it is not a proper party to this action and there is no statutory provision or common law right which would authorize the granting of such relief. R. 4:18-1(c) provides:
[R. 4:18-1] does not preclude an independent action against a person not a party for production of documents and things and permission to enter upon land.
The parties agree that this rule in itself does not authorize an independent action for discovery, but merely serves the purpose of making it clear that R. 4:18-1 does not preclude actions for discovery against persons not parties. See the Advisory Committee Comment to F.R. Civ. P. 34(c)  the federal counterpart to R. 4:18-1(c)  48 F.R.D. at 527; 8 Wright & Miller, Federal Practice & Procedure, § 2209 (1970). Note, "Rule 34(c) and Discovery of Nonparty Land," 85 Yale L.J. 112, 114 (1975). Thus, any right on the part of MCA to obtain relief in the nature of discovery must be found outside of R. 4:18-1(c).
MCA maintains that such a right exists in the form of an equitable bill of discovery. American Can replies that a bill of discovery will not lie against it because it is not a party to this action.
*506 Equity courts have long exercised their auxiliary jurisdiction to compel discovery alone without relief in aid of proceedings at law, 1 Pomeroy, Equity Jurisprudence (4th ed. 1918), § 192 at 265, and a suit for discovery could be brought by a defendant, as well as a plaintiff, in a pending legal action. Id., § 198, at 282; 27 C.J.S. Discovery § 10 at 20 (1959). The equitable bill of discovery's origin can be traced to the old, inflexible rules of the common law under which an adverse party could not be compelled to produce documents in his possession for the use of his opponent at trial. To cure this deficiency equity allowed an action solely for discovery. See 27 C.J.S. Discovery § 1 at 7; McCarter v. Farmer's Loan & Trust Co., 105 N.J. Eq. 322, 323 (Ch. 1929). The need to resort to equity to obtain discovery at law is virtually nonexistent under modern discovery rules and statutes. However, the majority view is that modern rules and statutes relating to discovery do not abrogate equitable jurisdiction as to bills of discovery, and equity may be resorted to where effective discovery cannot be obtained under the rules or statutes. 27 C.J.S. Discovery § 7 at 18; State v. Foster Wheeler Corp., 133 N.J. Eq. 554, 560 (Ch. 1943); Lutz Eng. Co., Inc. v. Sterling Eng. Co., Inc., 112 R.I. 605, 314 A. 2d 8, 10, n. 4 (Sup. Ct. 1974).
There is authority for the proposition that "[t]he principle of a bill of discovery was never considered to be applicable to third persons not parties * * *," 6 Wigmore, Evidence (Chad. Rev. 1976), § 1856d at 562 (emphasis in original). However, there is also authority for the view that "bills of discovery are not confined strictly to the parties to the action at law," and will lie against one who has an "interest in the subject matter of the action in aid of which discovery is sought." 27 C.J.S. Discovery § 10 at 21; Walter v. Penn R.R. Co., 134 N.J. Eq. 544, 547 (Ch. 1944).
Neither the diligence of counsel nor our independent research has uncovered any case or secondary authority which precisely defines what is meant by "interest" in the controversy. It is clear that a "mere witness" cannot be named a *507 defendant in an action for discovery. McCarter, supra, 105 N.J. Eq. at 323; Pomeroy, op. cit., § 199 at 286.
Several cases have allowed the equitable bill of discovery where the party from whom discovery was sought had a pecuniary interest in the outcome of the action at law or was in possession of information vital to the prosecution or defense of the legal action which information could not be obtained from any other source. See Pottetti v. Clifford, 146 Conn. 252, 150 A.2d 207, 212 (Sup. Ct. Err. 1959); Lefebvre v. Somerset Shoe Co., 93 N.H. 354, 41 A.2d 924, 927 (Sup. Ct. 1945).
In its third-party complaint MCA alleges that American Can "has in its sole possession, or at its disposal, knowledge of most, if not all facts relevant to the action brought by plaintiffs * * *." These allegations are deemed admitted for the purpose of this motion. It is also undisputed that American Can is a self-insured and has a significant pecuniary interest in the outcome of the action because of its statutory right to reimbursement. In view of these factors and the authorities previously discussed, I conclude that MCA's counts for discovery adequately state a claim for relief.
American Can's reliance upon the language in Lippman v. Hydro-Space Technology Inc., 77 N.J. Super. 497 (App. Div. 1962), is inappropriate. It argues that "the former bill of discovery has become obsolete." However, a reading of Lippman demonstrates that what the court was referring to when it used the quoted language was that for the purpose of discovery against a party the bill is obsolete because of our modern discovery rules. Moreover, to adopt the interpretation advocated by American Can would be to ignore the existence and purpose of R. 4:18-1(c). American Can's fear that allowing discovery in these cases might result in "undue burden, expense, inconvenience and harassment" is understandable, but this court has in the past and will in the future control the methods of discovery to avoid such a result.
*508 Finally, American Can's contention that R. 4:14-7(a) provides MCA with adequate discovery is unrealistic in the context of these cases.

EXPRESS INDEMNIFICATION
DuPont asserts that language appearing on its order form gives rise to a claim for express indemnification from American Can. If established, such an agreement will sustain an indemnification claim against an employer. Yearicks v. Wildwood, 23 N.J. Super. 379 (Law Div. 1952); 2 Larson, op. cit., § 76.41. In reply American Can views that language as a waiver of DuPont's liability as the result of the use of its products. It also urges that DuPonts order form should be read in context with American Cans "purchase order." Pursuant to my request the parties submitted copies of the documents relied upon.
The following appears on the reverse side of DuPont's order form under the legend "Conditions of Sale":
2. Except as provided in condition 3 Seller makes no warranty of any kind, expressed or implied except that the products sold hereunder shall be of merchantable quality; and the Buyer assumes all risk and liability for results obtained by the use of the products covered by this contract, whether used singly or in combination with other products.
The following appears on the reverse side of American Can's "purchase order" under the legend "Terms and Conditions":
4. Seller agrees to assume the defense of and indemnify and hold buyer harmless from and against any and all claims of any nature whatsoever, and the cost and expense, including counsel fees of defending the same, based upon or arising out of any defect in any article furnished hereunder, or based upon or arising out of any construction, installation, services or facilities furnished under or in connection with this purchase order.
DuPont claims that paragraph 2 is an indemnity contract. As such it is to be interpreted in accordance with *509 the rules governing the construction of contracts generally. Cozzi v. Owens Fiberglass Corp., 63 N.J. Super. 117, 121 (App. Div. 1960). The fundamental rule of construction "calls for the ascertainment of the intent of the parties in the light not only of the language used but also the surrounding circumstances and the objects sought to be attained by the parties by their agreement." Stern v. LaRocca, 49 N.J. Super. 496, 501 (App. Div. 1958).
Since this issue arose on American Can's motion to dismiss, there is nothing before the court to indicate the nature and extent of the circumstances surrounding formation of the agreement between the parties. In short, at this juncture there is nothing from which the intent of the parties can be ascertained. Also see, N.J.S.A. 12A:2-207; 1 Williston on Sales (4th ed. 1973), § 7-5; Nordstrom, Sales, §§ 36-37 (1970). Accordingly, American Can's motion to dismiss DuPont's counterclaim seeking express indemnification is denied.
NOTES
[1] Arcell v. Colgate et al. is a consolidated case which includes 661 plaintiffs in the action captioned Arcell v. Ashland et al. and the 42 plaintiffs in the action captioned Murph v. Ashland et al.