[609 NYS2d 933]

In the Matter of KARLIN FARMS, Respondent, v BOARD OF
ASSESSORS OF THE TOWN OF RIVERHEAD et al., Appellants.

Second Department, April 11, 1994

**APPEARANCES OF COUNSEL**

*Smith, Finkelstein, Lundberg, Isler & Yakaboski,* Riverhead (*Francis J. Yakaboski* and *Dawn C. Thomas* of counsel), for appellants.

*Charles R. Cuddy,* Riverhead, for respondent.

*Robert L. Beebe,* Albany, for New York State Board of Equalization and Assessment, *amicus curiae.*

**OPINION OF THE COURT**

BALLETTA, J.

On this appeal, we are asked to determine the proper interpretation and application of Agriculture and Markets Law § 306 pertaining to the tax assessment of land which lies outside the boundaries of an agricultural district but which is still used for agricultural production. Specifically, the question has arisen as to when such land loses its special agricultural status for assessment purposes and when, and in what amount, a penalty tax may be imposed.

The petitioner is the owner of a parcel of real property known as Calverton Homesteads, consisting of approximately 62 acres located in the Town of Riverhead. Prior to 1988, the subject parcel constituted a single tract on the tax assessment rolls, for which the petitioner had obtained an agricultural assessment pursuant to Agriculture and Markets Law § 306. To receive the agricultural assessment which benefited the petitioner by virtue of having its taxes computed on a relatively low assessed value of $220,000, the petitioner annually filed an agricultural commitment, agreeing to use the land exclusively for agricultural production for the succeeding eight years. The petitioner, by its own estimate, saved an average of approximately $55 per acre per year, or approximately $23,870 over seven years, as the result of the agricul-

tural assessment. The last agricultural commitment filed by the petitioner was in May 1987.

In 1988, the petitioner did not file its annual agricultural commitment, and in May of that year, it filed a subdivision map with the County of Suffolk. According to the subdivision map, the 62-acre parcel known as Calverton Homesteads was divided into 55 separate parcels including 50 residential lots. Accordingly, on June 1, 1988, the taxable status date for 1987-1988, the Board of Assessors increased the assessment of the newly subdivided parcel to $627,000, reflecting the actual market value of the 55 parcels. The petitioner did not challenge this reassessment and paid the tax bill for approximately $38,000. Apparently, although the subdivision plan had been filed and no agricultural commitment had been filed by the petitioner, no penalty tax was imposed in addition to the reassessment because there had yet to be a physical change on the property, converting it from agricultural use.

Thereafter, at some point between June 1, 1988 and June 1, 1989, the petitioner commenced road construction and the installation of drainage systems on the subject property. Consequently, in June 1989 the Board of Assessors of the Town of Riverhead concluded that the construction work was an overt act constituting a breach of the agricultural commitment, and informed the petitioner that a penalty tax would be imposed on its next tax bill. This penalty tax was equal to two times the taxes computed on the basis of the $627,000 reassessment of the subdivided parcel made in the prior year.

The petitioner subsequently filed with the Board of Assessment Review a duly verified protest to the farm tax penalty, arguing that the penalty tax should have been two times the taxes based upon the previous assessed value of $220,000. According to the petitioner's method of calculation, the penalty tax should have been approximately $25,000 instead of the approximately $74,000 which was actually imposed. The Board of Assessment Review denied the petition. Thereafter, the instant proceeding was timely commenced. The Supreme Court, *inter alia,* granted the petition, vacated the challenged penalty tax, directed that the $627,000 assessed valuation for the 1988-1989 year be struck from the assessment rolls, directed that the assessment rolls be corrected to reflect a $220,000 assessed valuation for the 1988-1989 year, and directed that the penalty tax be *recomputed* using the $220,000 assessed valuation. We now hold that the Supreme Court erred in its determination, reverse, and dismiss the petition.

Article 25AA of the Agriculture and Markets Law "authorizes a partial exemption from taxation of certain farmland used in commercial agricultural production by providing that such land may be eligible for an agricultural value assessment" (6 Opns Counsel SBEA No. 66, at 143). This statutory scheme operates to the benefit of owners of qualified farmland having a real value in excess of its agricultural value (the agricultural value being "indicative of what one farmer would pay to another in an arms-length transaction" [4 Opns Counsel SBEA No. 32, at 53; *see,* 6 Opns Counsel SBEA No. 66]) because, pursuant to the statute, "[such] excess value becomes exempt from taxation" (6 Opns Counsel SBEA No. 66, at 143), and the resulting assessment is termed the "agricultural value assessment" (4 Opns Counsel SBEA No. 32). If, as in the instant matter, the qualified farmland is located outside an agricultural district, the Legislature has required the landowner, prior to applying for the agricultural assessment, to file a commitment with the County Clerk promising "to use such land exclusively for agricultural production for the next succeeding eight years" (Agriculture and Markets Law § 306 [1]). Therefore, in order for an agricultural landowner to derive the benefit of an agricultural assessment and thereby be exempt from taxation for the value of the property above its agricultural value, the owner must (1) annually file the aforementioned agricultural commitment, and (2) annually apply for the agricultural assessment.

The very concept of the agricultural value assessment presupposes that each eligible parcel has two distinct valuations: a lower, agricultural value which is based upon its use as farmland; and a higher, actual value which is the assessed value of the property at its highest and best use *(see,* 4 Opns Counsel SBEA No. 32; 7 Opns Counsel SBEA No. 20). In this case, prior to 1988, the petitioner had been receiving the benefit of having its real estate taxes computed based upon the relatively low agricultural value assessment of $220,000. Accordingly, that portion of the property's higher, actual value which exceeded this agricultural assessment was exempt from taxation. However, in 1988, the petitioner did not apply for an agricultural value assessment and, consequently, it was no longer entitled to an exemption for the portion of the property's value which exceeded its agricultural value. Once the petitioner declined the benefit of an agricultural value assessment, the Board of Assessors was obligated to reassess the property to reflect its true market value at its highest and

best use (i.e., residential development). Moreover, upon the filing of the petitioner's subdivision map in 1988, the Board was required to separately assess each subdivided lot *(see,* 5 Opns Counsel SBEA No. 46).

Significantly, neither the Supreme Court nor the petitioner cite precedential authority which supports the proposition that the Board of Assessors was lawfully required to wait until the petitioner breached the agricultural commitment through physical nonagricultural use of the premises before reassessing the subject property. In fact, the position of the Supreme Court is actually contrary to the well-settled principle that where the farmland is not actually converted to nonfarm use but, rather, simply lies fallow, the agricultural assessment will not apply *(see,* 6 Opns Counsel SBEA No. 66). Under the hypothesis of the Supreme Court, however, the fallow land would still be entitled to an agricultural assessment, so long as there was no nonagricultural use of the property, even if the landowner did not file its agricultural commitment as required by the statute.

Accordingly, we hold that it was not improper for the Board of Assessors, once the petitioner declined the benefit of the agricultural value assessment and upon its filing of the subdivision map, to reassess the land so as to reflect its true market value when put to its highest and best use.

In addition, although the petitioner failed to file its annual agricultural commitment, thus manifesting its nonacceptance of the agricultural value assessment prior to June 1, 1988, taxable status day for the 1987-1988 year, it is uncontroverted that the agricultural commitment was not breached until the commencement of construction activities after June 1, 1988 *(see,* 6 Opns Counsel SBEA No. 66).

Pursuant to Agriculture and Markets Law former § 306 (2), in effect at the time of the instant controversy, when land subject to an agricultural commitment is converted to a use other than agricultural production, its owner is subject to a penalty tax for breach of the commitment. At the time of the petitioner's breach, the penalty tax was statutorily required to be "equal to two times the taxes determined for all land value subject to such commitment on the assessment roll prepared on the basis of the first taxable status date on which the assessor considers the commitment to have been breached" (Agriculture and Markets Law former § 306 [2] [a]). Thus, according to the clear meaning of this statute, the penalty tax

imposed upon the petitioner was to be equal to two times the taxes determined based upon the assessment roll prepared on June 1, 1989, the taxable status day for the 1988-1989 year. Since by June 1, 1989, the subject lands had already been subdivided and reassessed at $627,000 to reflect the actual market value of the 55 parcels, we hold that the Board of Assessors properly calculated the penalty tax.

Although Agriculture and Markets Law § 306 (2) has since been amended to lessen the severity of the penalty imposed upon the conversion of land outside an agricultural district which is subject to an agricultural assessment, the Legislature did not promulgate the new formula until 1992 and set its effective date as November 5, 1992. Therefore, this new formula, which sets the penalty at five times the taxes saved during the last year in which the land received the agricultural assessment, plus interest, is not applicable in this case.

Accordingly, we conclude that the Board of Assessors properly reassessed the subject lands on June 1, 1988, and properly calculated the subject penalty tax imposed on June 1, 1989.

Accordingly, the order appealed from is reversed, on the law, with costs, and the proceeding is dismissed.

THOMPSON, J. P., BRACKEN and SANTUCCI, JJ., concur.

Ordered that the order is reversed, on the law, with costs, and the proceeding is dismissed.