[990 NYS2d 551]

In the Matter of MARLENE JACOBOWITZ, Appellant, v BOARD OF ASSESSORS FOR TOWN OF CORNWALL et al., Respondents.

Second Department, July 30, 2014

## APPEARANCES OF COUNSEL

*Jacobowitz and Gubits, LLP*, Walden (*Gerald N. Jacobowitz* and *Kara J. Cavallo* of counsel), for appellant.

*Ira S. Levy*, Rye Brook, for respondents.

Dickerson, J.

## Introduction

The petitioner is one of several property owners in the Town of Cornwall who commenced tax certiorari proceedings beginning in 2006 to challenge the assessment of their properties. In 2012, while the proceedings were pending, the Board of Assessors for the Town of Cornwall (hereinafter the Board) and the Town of Cornwall (hereinafter together the Town respondents), requested permission from the petitioner to inspect the interior of her home for the purposes of appraisal. The petitioner refused. The Town respondents' attorney then made an application to the Supreme Court to compel the petitioner to grant the Town's appraiser access to her home to conduct an interior appraisal inspection. The petitioner, at the Supreme Court's direction, moved to preclude the Town's appraiser from conducting an interior inspection of her home, maintaining that it would violate her Fourth Amendment rights. In the order appealed from, the Supreme Court denied the petitioner's motion, granted the Town respondents' application, and directed that "an inspection of the subject premises shall occur within 30 days of the date of this order."

We hold that the Town respondents bore the burden of demonstrating their entitlement to enter the petitioner's home over her objections. The petitioner bore no burden, in the first instance, to demonstrate her right to preclude the Town respondents from entering into her home against her will. The right to be free from unreasonable searches is granted by the Fourth Amendment, and made applicable to the states and their subdivisions by virtue of the Fourteenth Amendment (*see Mapp v Ohio*, 367 US 643 [1961]), though this right is by no means absolute. By directing the petitioner to move to preclude the Town's appraiser from conducting an interior appraisal inspection of her home, the Supreme Court improperly shifted, from the Town respondents, the burden of demonstrating their entitlement to enter into the petitioner's home, to the petitioner to demonstrate her right to preclude the Town respondents from sending an agent into her home. We further hold that, based on a proper balancing of the Town respondents' interest in conducting the inspection against the petitioner's Fourth Amendment rights, and the privacy invasion that such a "search" would entail, the Town respondents failed to satisfy their burden.

## Factual Background

The petitioner, Marlene Jacobowitz, owns a single-family residence in the Town of Cornwall. According to the petitioner, on or before May 1, 2006, the Board prepared a general assessment roll for the tax year 2006-2007. The Board assessed the petitioner's property at a value of $735,700, an increase of more than $96,000 from the previous tax year. The Town posted a notice alerting taxpayers and property owners to a forum scheduled for May 23, 2006, at which assessments could be reviewed.

The petitioner appeared at the scheduled forum, and objected to the assessment of her property. She claimed that the Board overvalued her property by $344,700. Additionally, the petitioner filed with the Town a verified statement alleging that the assessment of her property was both unequal and unlawful.

Ultimately, the Town respondents did not modify the assessment of the petitioner's property, and the assessment, as originally computed, was set forth in the Town respondents' completed tax assessment roll.

On or about July 27, 2006, the petitioner commenced a tax certiorari proceeding in the Supreme Court pursuant to RPTL article 7 by filing a notice of petition and petition to review the Town respondents' assessment of her real property for tax year 2006-2007. In her petition, she alleged that the assessment was illegal because it exceeded the fair market value of the property. She also alleged that the assessment was unequal because her property was assessed at a higher proportionate value than other property within the same tax district. In this regard, she asserted that her property was assessed at more than 100% of its fair market value, whereas the property of other owners in the tax district was not assessed at such a percentage of its fair market value.

The petitioner filed a second notice of petition and petition pursuant to RPTL article 7 on or about July 9, 2007 to challenge the general assessment roll for the tax year 2007-2008. This second petition advanced allegations substantially similar to those set forth in the 2006 petition.

According to the petitioner, and as reflected by the record before us, the Town respondents did not serve answers to her petitions. Accordingly, by operation of Real Property Tax Law § 712 (1), the Town respondents were deemed to have denied the allegations in the petitions.

The petitioner's proceedings were stayed pending this Court's determination of the appeal in *Matter of Leone Props., LLC v Board of Assessors for Town of Cornwall* (81 AD3d 649 [2011]). That appeal, which was decided in February 2011, involved a different taxpayer's challenge to the Town respondents' assessments of real property as constituting unlawful selective assessments. In *Leone*, this Court concluded that the taxpayer established that the Town "improperly reassessed the subject property on a selective basis, both with regard to the assessor's reassessment methodology for the relevant tax years in general, and the implementation of that methodology in connection with the increased assessments for the subject property in particular" (*id.* at 651). Accordingly, this Court held, among other things, that the Supreme Court in that case properly granted the taxpayer's motion for summary judgment on its petitions (*id.*).

Following this Court's decision in *Leone*, the Town respondents offered to settle disputes with various individual property owners by reducing the assessments on their properties to pre-2006 levels. Among all of the property owners, only the petitioner rejected the Town respondents' settlement offer, and elected to continue the instant proceedings seeking an assessment based on her property's fair market value.

After the petitioner's rejection of the proposed settlement, the Town respondents requested her permission to inspect the interior of her home for the purpose of appraisal. The petitioner refused.

The Town respondents, by their attorney, then made an application to the Supreme Court to compel the petitioner to grant access to the Town's appraiser to conduct an interior appraisal inspection of her home. In support of the application, the Town respondents asserted that "the petitioner does not get to dictate the terms under which [she] will permit the Town's appraiser to inspect the property." They maintained that the petitioner, by seeking a reduction in the assessed value of her property based on market value for purposes of taxation, placed the market value of the property at issue, opening the door to review of the market value and necessitating an appraisal. The Town respondents urged the court that they must be permitted to prepare their defense, and asserted that denying access to the Town's appraiser would place them at a severe disadvantage, where only the petitioner's appraiser would have access to the petitioner's home.

The petitioner, at the Supreme Court's direction, moved to preclude the Town respondents from conducting an interior appraisal inspection of her home. In her motion papers, the petitioner argued that the Town respondents had the burden of showing their need to conduct the inspection, and that allowing the Town's appraiser to conduct an interior appraisal inspection without first obtaining a warrant constituted a warrantless search in violation of her Fourth Amendment rights.

## The Order Appealed From

In the order appealed from, the Supreme Court denied the petitioner's motion. The court noted that the petitioner had improved her property between 2006 and 2011, as reflected by building permits obtained during that period. In light of the improvements and the fact that the proposed inspection was relatively close in time to the tax years at issue, the court concluded that there was no basis to prohibit the Town's appraiser from inspecting the interior of the premises. Additionally, the court granted the Town respondents' application, and directed that "an inspection of the subject premises shall occur within 30 days of the date of this order."

## Discussion

A property owner may challenge an assessment pursuant to RPTL article 7 on several grounds, including that "the assessment is excessive, unequal or unlawful" (RPTL 706 [2]; *see* NY Const, art XVI, § 2; RPTL former 306; *W.T. Grant Co. v Srogi*, 52 NY2d 496, 512 [1981]). "It is well settled that a system of selective reassessment that has no rational basis in law violates the equal protection provisions of the Constitutions of the United States and the State of New York" (*Matter of Leone Props., LLC v Board of Assessors for Town of Cornwall*, 81 AD3d at 650 [internal quotation marks omitted]; *see Matter of Weiner v Board of Assessors &/or Assessor of Town/Vil. of Harrison*, 69 AD3d 949, 950 [2010]; *Matter of Mundinger v Assessor of City of Rye*, 187 AD2d 594, 595 [1992]).

"[A] locality's tax assessment is presumptively valid[,] [but] a petitioner may overcome that presumption by bringing forth substantial evidence that its property has been overvalued" (*Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes*, 92 NY2d 192, 196 [1998] [citation omitted]; *see Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179, 188 [1998]). If the petitioner rebuts the presumption of validity,

the court must then examine the entire record and determine whether the petitioner has established, by a preponderance of the evidence, that the property has been overvalued (*see Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d at 188). A finding that an assessment is excessive or unequal may be remedied by a revised or corrected assessment (*see* RPTL 720 [1] [b]). " '[R]eassessment upon improvement is not illegal in and of itself . . . [n]or is the use of the purchase price or the current market value to reach a tax assessment in and of itself unconstitutional so long as the implicit policy is applied evenhandedly to all similarly situated property' " (*Matter of Leone Props., LLC v Board of Assessors for Town of Cornwall*, 81 AD3d at 650-651, quoting *Matter of Weiner v Board of Assessors &/or Assessor of Town/Vil. of Harrison*, 69 AD3d at 950; *see Allegheny Pittsburgh Coal Co. v Commission of Webster Cty.*, 488 US 336 [1989]; *Matter of Stern v Assessor of City of Rye*, 268 AD2d 482, 483 [2000]; *Nash v Assessor of Town of Southampton*, 168 AD2d 102 [1991]).

The relief requested by the Town respondents, which the petitioner sought to forestall by moving to preclude them from conducting an interior appraisal inspection of her home, implicates the petitioner's privacy rights under the Fourth Amendment to the United States Constitution, enforceable against the states and their subdivisions through the due process clause of the Fourteenth Amendment to the United States Constitution (*see Mapp v Ohio*, 367 US 643 [1961]). The Fourth Amendment provides that

> "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

"One of the basic rights and values of our society is the right of a free individual to be secure in his or her privacy from unwarranted government intrusion" (*Matter of B. T. Prods. v Barr*, 44 NY2d 226, 236 [1978]). The basic purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials" (*Camara v Municipal Court of City & County of San Francisco*, 387 US 523, 528 [1967]). "The Fourth Amendment thus gives concrete expression to a right of the people which 'is basic to a free society' " (*id.*, quoting *Wolf v Colorado*, 338 US 25, 27 [1949]).

Although administrative inspections of the physical condition of private property may be viewed as "a less hostile intrusion than the typical policeman's search for the fruits and instrumentalities of crime" (*Camara v Municipal Court of City & County of San Francisco*, 387 US 523, 530 [1967]), such inspections are also "significant intrusions upon the interests protected by the Fourth Amendment" (*id.* at 534). In recognition of the rights of citizens to limit the circumstances "under which the sanctity of [the] home may be broken by official authority" (*id.* at 530-531), the United States Supreme Court held in *Camara* that administrative searches aimed at ensuring compliance with fire, health, and housing codes are subject to the protections provided by the warrant procedure developed under the Fourth Amendment (*id.* at 533-534). Thus, "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant" (*Camara v Municipal Court of City & County of San Francisco*, 387 US at 528-529; *see Matter of Yee v Town of Orangetown*, 76 AD3d 104, 111 [2010]; *Schlesinger v Town of Ramapo*, 11 Misc 3d 697, 699 [Sup Ct, Rockland County 2006]). "A search warrant is required for 'a routine inspection of the physical condition of private property' " (*Matter of Yee v Town of Orangetown*, 76 AD3d at 111, quoting *Camara v Municipal Court of City & County of San Francisco*, 387 US at 530).

"In cases in which the Fourth Amendment requires that a warrant to search be obtained, 'probable cause' is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness" (*Camara v Municipal Court of City & County of San Francisco*, 387 US at 534). "To apply this standard, it is obviously necessary first to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen" (*id.* at 534-535).

For the Town respondents to establish their entitlement to conduct an interior inspection of the petitioner's home for purposes of appraisal, in the absence of the petitioner's consent, the Town respondents bore the burden of demonstrating that the "particular inspection [was] reasonable—and thus [that] there [was] probable cause to issue a warrant for that inspection" (*id.* at 535; *see* US Const Amends IV, XIV).

■ Since the Town respondents sought entry into the petitioner's home to have the Town's appraiser conduct an

inspection of the premises, the Town respondents were required to obtain a warrant upon a showing of probable cause. By directing the petitioner to move to preclude the Town respondents from conducting an interior inspection of her home, the Supreme Court improperly shifted the burden from the Town respondents to demonstrate their entitlement to entry into the petitioner's home upon a showing of probable cause, to the petitioner to demonstrate her right to deny entry to the Town respondents (*see Matter of Aylward v City of Buffalo*, 101 AD3d 1743, 1744 [2012]).

> "[B]y erroneously requiring [the] petitioner[ ] to move to preclude, the court did not properly evaluate the reasonableness of the inspections sought by respondents, i.e., the court did not conduct the necessary Fourth Amendment analysis balancing respondents' need for interior inspections against the invasion of petitioner['s] privacy interests that such inspections would entail" (*id.*; *see Matter of Yee v Town of Orangetown*, 76 AD3d at 111-113; *Schlesinger v Town of Ramapo*, 11 Misc 3d at 699-700; *see generally Camara v Municipal Court of City & County of San Francisco*, 387 US 523 [1967]).

Contrary to the Town respondents' contention, the petitioner did not, by challenging the Town respondents' assessments, "open the door" to inspection of the interior of her property against her will, in effect, waiving her Fourth Amendment rights (*see Matter of Yee v Town of Orangetown*, 76 AD3d at 111-112). "A waiver of constitutional rights must be knowing and intelligent" (*id.* at 111; *see Fiore v Oakwood Plaza Shopping Ctr.*, 78 NY2d 572, 581 [1991], *cert denied* 506 US 823 [1992]). On this record, there is no such waiver. The petitioner has, in a sense, placed the assessed value of her property in issue, and her act of challenging the assessments of her property is a relevant factor to consider in balancing the reasonableness of the Town respondents' interest in seeking entry into the petitioner's home for inspection against the petitioner's privacy interests. However, the petitioner's actions do not amount to a waiver of her Fourth Amendment right to privacy.

Thus, again, when properly framed, the burden was on the Town respondents to demonstrate, in the first instance, the reasonableness of their desired inspection of the petitioner's home, against her will, upon a showing of probable cause sufficient to justify the violation of the petitioner's privacy interests

that such an appraisal inspection would entail. "The reasonableness of the search depends on the context within which it takes place" (*Matter of Yee v Town of Orangetown*, 76 AD3d at 111). "[T]here can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails" (*Camara v Municipal Court of City & County of San Francisco*, 387 US at 536-537). Thus, here, the reasonableness of the Town respondents' proposed inspection must be considered in the context of their need for the inspection—to conduct an interior appraisal in order to arrive at an estimate of the fair market value of the petitioner's home and to defend themselves against claims of selective assessment—and must be weighed against the invasion of the petitioner's Fourth Amendment privacy interests (*see Matter of Aylward v City of Buffalo*, 101 AD3d at 1744).

In support of their application to compel access to the petitioner's home, and in opposition to the petitioner's motion, the Town respondents asserted that they "must be afforded the opportunity to prepare [their] defense of the proceedings," and that, in order to do so, the Town's appraiser must be afforded access to the petitioner's home. According to the Town respondents, denial of access would be unfair to them in the preparation of their defense in these proceedings. The Town respondents claimed that this was necessary, "if only to be able to put the best and most complete evidence before the Court."

■ Ultimately, the Town respondents may be able to demonstrate that, under the circumstances of this case, the particular inspection sought is reasonable and, thus, that probable cause exists to support the issuance of a warrant authorizing entry into the petitioner's home for the purpose of conducting an appraisal inspection. However, in light of the impermissible burden shifting, and the Town respondents' failure to adequately support their application, on this record, they failed to meet their burden.

The nature of the inspection sought, and the degree of the resulting intrusion, are clear. The Town respondents seek entry into the petitioner's home for the sole purpose of conducting an appraisal inspection of the premises for tax assessment purposes. Among the reasons they seek to do so is to defend themselves in these proceedings against claims of selective assessment. This governmental interest is not per se unreasonable.

As the United States Supreme Court explained in *Camara*, "[i]n determining whether a particular inspection is reason-

able—and thus in determining whether there is probable cause to issue a warrant for that inspection—the need for the inspection must be weighed in terms of " the governmental interest at issue (*Camara v Municipal Court of City & County of San Francisco*, 387 US at 535).

On this record, it is not clear that the Town respondents are incapable of gathering the information sought without the need to infringe on the petitioner's privacy rights. They did not, for example, submit an affidavit by the Town's assessor or another person with personal knowledge of the facts and circumstances indicating that access to the interior of the premises was necessary to accurately arrive at the fair market value thereof. They did not, in other words, support the application "such as by way of an appraiser's affidavit, that interior inspections were necessary to prepare their defense" (*Matter of Aylward v City of Buffalo*, 101 AD3d at 1744). Thus, the Town respondents did not establish that an interior inspection is necessary to defend themselves in these proceedings (*see Matter of Yee v Town of Orangetown*, 76 AD3d at 113).

The petitioner also questions—and, in support of their application, the Town respondents have not adequately addressed—why the Town respondents require entry into her home, against her will and infringing upon her Fourth Amendment rights, when the Town respondents previously did not require access to her home to review the assessment and market value thereof, and to calculate the market value of the property. In this regard, the petitioner emphasizes the contents of an affidavit sworn to by Ronald Fiorentino, sole appointed Assessor for the Town, who, prior to these proceedings, "reviewed the assessment and market value of every property within the Town, for both completeness and accuracy, and corrected information and assessments when either was incomplete and/or inaccurate." Fiorentino specifically stated that he reviewed the petitioner's property and its assessments, and recalculated the market value of the property. Obviously, the petitioner has disputed Fiorentino's assessment. However, Fiorentino's affidavit demonstrates that it is certainly contemplated, perhaps indeed commonplace, that assessments may be performed without gaining access to property and in the absence of an interior inspection thereof.

As recognized by the counsel to the former New York State Board of Equalization and Assessment (now known as the New York State Board of Real Property Tax Services of the New York State Department of Taxation and Finance), whose legal

opinions with respect to assessments and appraisals are entitled to some consideration by the courts (*see generally Matter of Commerce Holding Corp. v Board of Assessors of Town of Babylon*, 88 NY2d 724, 729-730 [1996]; *Matter of Long Is. Community Fellowship v Assessor of Town of Islip*, 95 AD3d 1128, 1130 [2012]; *Matter of Karlin Farms v Board of Assessors of Town of Riverhead*, 197 AD2d 32 [1994]),

> "[i]n the event an assessor is unable to accurately appraise a parcel of real property without an inspection of the property, and access to the property is denied by the taxpayer, the assessor would nevertheless have to arrive at an appraised value which most nearly reflects the probable value of the property. Such an appraisal of residential real property could be based on the improvements found in similar homes, an estimate of the interior of a home by third persons who have been there, or any other reasonable method calculated to aid the assessor under these circumstances" (2 Ops Counsel SBEA No. 78 [1972]).

Since there are numerous alternative methods of accurately appraising the value of residential real property, under the circumstances presented here, the Town respondents' interest in accurately appraising the petitioner's home by means of an interior inspection does not outweigh the petitioner's privacy and property interests in precluding a warrantless entry and search of her home.

The petitioner also questions the utility of conducting an inspection in 2012, when the Town respondents' application and her motion were pending, relative to her property's value in 2006, which is the subject of the first of the proceedings before us. In *Schlesinger v Town of Ramapo* (11 Misc 3d 697, 700-701 [2006]), the Supreme Court pointed out that the respondent in that proceeding had "failed to address how an interior inspection of the subject premises in 2005 will accurately reflect the condition of the interior in 1999, the year in which the petitioner brings this action for a reduction in the tax assessment." Similarly, in seeking entry into the petitioner's home, the Town respondents have not adequately addressed this issue.

Moreover, the Town respondents' interest here may be significantly less compelling than, for example, the inspection at issue in *Camara*, which was a routine inspection for possible violations of San Francisco's Housing Code (*see Camara v Mu-*

*nicipal Court of City & County of San Francisco*, 387 US at 525). Inspections such as that in *Camara* serve a rational governmental interest in preventing the development of conditions that would pose a hazard to public health and safety (*id.* at 535). Here, the governmental interest at stake is conducting an accurate assessment of the subject property so that it may be taxed at its true value, thereby ensuring that the property owner is contributing equitably to the public fisc (*see Matter of Roth v City of Syracuse*, 21 NY3d 411, 416 [2013]; *Matter of Allied Corp. v Town of Camillus*, 80 NY2d 351, 356 [1992]; *Matter of Consolidated Edison Co. of N.Y., Inc. v City of New York*, 33 AD3d 915, 916 [2006]; *Matter of Pinelawn Cemetery v Board of Assessors & Bd. of Assessment Review of Town of Babylon*, 300 AD2d 492, 493 [2002]). While this is a legitimate, important government interest, it is not as compelling as ensuring public health and safety *see* 9 Ops Counsel SBEA No. 4 [1989, rev 1990] ["There are no legislative or administrative standards or guidelines promulgated for an assessor conducting inspections to determine real property tax assessments. Accordingly, compared to fire, health or building inspectors, in our opinion, assessors would be far less likely to demonstrate probable cause to obtain an inspection warrant"]). Even the "long history of judicial and public acceptance" (*Camara v Municipal Court of City & County of San Francisco*, 387 US at 537) of area-based, warrantless building code inspections is insufficient to overcome the constitutional infirmity of such a program (*see id.* at 538-540), and it is far from clear that affording governmental access to private homes over the owners' objections for the purpose of reaching an assessment value has anywhere near the same history of judicial and public acceptance. Accordingly, consideration of this factor militates against the constitutionality of permitting warrantless government access to private homes for this purpose.

Conversely, factors supporting the conclusion that the Town respondents' proposed inspection would be reasonable include the public interest in the accurate performance of the assessment of the value of the subject property (*cf. id.*). Moreover, as discussed above, the fact that the petitioner has, to an extent, placed the fair and accurate assessment of her property in issue may be weighed in determining the reasonableness of the inspection sought. All of these factors should be carefully weighed in reviewing any future application to inspect the petitioner's home.

In sum, however, the Town respondents failed to meet their burden of establishing their present entitlement to enter into and inspect the petitioner's home for purposes of conducting an appraisal inspection. On this record, the Town respondents have not established that their interest in accessing the petitioner's property and conducting the appraisal inspection outweighs the petitioner's Fourth Amendment privacy rights. Since the Town respondents failed to satisfy their burden, the Supreme Court should have denied their application to compel the petitioner to provide access to her home so that the Town's appraiser could conduct an appraisal inspection. Moreover, in the absence of a demonstration by the Town respondents of entitlement to enter the premises, the court should have granted the petitioner's motion to preclude the Town's appraiser from conducting an interior inspection of her premises.

The petitioner's remaining contentions need not be reached in light of our determination.

Accordingly, the appeal from so much of the order as granted the application of the Town of Cornwall to compel the petitioner to grant it access to the interior of her home to conduct an interior appraisal inspection is deemed to be an application for leave to appeal from that portion of the order, and leave to appeal is granted, and the order is reversed, on the law, the petitioner's motion to preclude the Town of Cornwall's appraiser from conducting an interior appraisal inspection of her home is granted, and the application of the Town of Cornwall to compel the petitioner to grant it access to the interior of the home to conduct an appraisal inspection is denied.

DILLON, J.P., AUSTIN and COHEN, JJ., concur.

Ordered that the appeal from so much of the order as granted the application of the Town of Cornwall to compel the petitioner to grant it access to the interior of her home to conduct an interior appraisal inspection is deemed to be an application for leave to appeal from that portion of the order, and leave to appeal is granted (see CPLR 5701 [c]); and it is further,

Ordered that the order is reversed, on the law, the petitioner's motion to preclude the appraiser of the Town of Cornwall from conducting an interior appraisal inspection of her home is granted, and the application of the Town of Cornwall to compel the petitioner to grant it access to the interior of the home to conduct an appraisal inspection is denied; and it is further,

Ordered that one bill of costs is awarded to the petitioner.