NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

_____

| | | |
|---|---|---|
| DR. MICHAEL T. SHERMAN, | : | TAX COURT OF NEW JERSEY |
| Plaintiff, | : | DOCKET NO: 012930-2017 |
| | : | |
| vs. | : | |
| | : | |
| VENTNOR CITY, | : | |
| Defendant. | : | |

_____:

Decided: November 21, 2019.

Daniel J. Gallagher, Esquire for plaintiff (Law Office of Daniel J. Gallagher, Esquire, attorney).

Edward O. Lind, III, Esquire for defendant (Hank N. Rovillard Esquire, L.L.C., attorney).

**CIMINO, J.T.C.**

## I.    INTRODUCTION.

Taxpayer, Dr. Michael T. Sherman appealed the assessment of his property in the City of Ventnor.  While the appeal was pending, the property was sold to a third party.  The City wants to inspect the property in preparation for trial, however, the new owner has rebuffed requests for an inspection.  The City has filed a motion to dismiss for failure to allow discovery.  The issue is who had the burden to secure the

inspection, and who should suffer the consequences if an inspection cannot be completed. For the reasons set forth in much greater detail below, the court determines that the onus in upon the taxpayer to secure the inspection, and failing the completion of an inspection, the matter must be dismissed.

## II.     STATEMENT OF FACTS.

The taxpayer, Dr. Michael T. Sherman, was the owner of a premises located at 6717 – 6719 Atlantic Avenue, in the City of Ventnor, in the County of Atlantic. The building is a three-story attached structure with both commercial and residential units. The property is known as Lots 5 and 6 of Block 75 on the City of Ventnor's tax maps.

On April 28, 2017 the taxpayer filed an appeal with the Atlantic County Board of Taxation challenging the revalued assessment of the property for 2017 which was set at $198,600.00 for Lot 5 and $264,800.00 for Lot 6. The County Tax Board dismissed without prejudice the appeal of Lots 5 and 6 by issuing judgments on July 28, 2017 and August 8, 2017. A dismissal without prejudice allows the matter to be appealed to the Tax Court without risk of the matter being dismissed at the Tax Court for lack of prosecution before the County Tax Board. See N.J.S.A. 54:51A-1(c).

On September 8, 2017, the taxpayer filed his appeal with the Tax Court. The County Tax Board attempted to revise its judgments in October to reflect that the dismissal was with prejudice. The court decided on September 13, 2018, that the

time for the County Tax Board to redetermine the appeal had expired.  Sherman v. Ventnor, 2018 N.J. Tax Unpub. LEXIS 58, 2018 WL 4368942 (Tax Sept. 13, 2018). See also N.J.S.A. 54:3-26 (time limit to hear appeals);  Vicari v. Township of Bethlehem, 8 N.J. Tax 513, 519 (Tax 1986) (same issue).

On October 10, 2018, the City requested an inspection of the property.  On October 11, 2018, the taxpayer sold the property to a third party for $286,000.

It is not disputed that the taxpayer attempted to secure the consent of the new owner to allow the City to inspect, and that the new owner has refused.  The taxpayer alleges that the new owner refused because he was told by City officials that an inspection could result in an increased assessment.  On the other hand, the City alleges that it was informed that the new owner was in a dispute with the taxpayer over repairs to the property.  Both allegations are hearsay.

The City filed the instant Motion to Dismiss the taxpayer's complaint for failure to provide discovery.

### III.   LEGAL ANAYLSIS.

All property assessment appeals with tax bills of less then $25,000.00 in the prior tax year can be filed as a small claims case.[1]  N.J.S.A. 2B:13-14; R. 8:3-4(d), R. 8:11(a)(2).  For a small claims action, discovery from the taxpayer is limited to

---

[1]  Assessment appeals of residential properties consisting of one through four units also qualify as small claims cases regardless of tax bill amount.

inspection of the subject premises, a closing statement if there has been a sale of the subject premises within three years of the assessing date, the cost of improvements within three years of the assessing date, income, expense and lease information for income-producing property and information relating to a claim of damage to the property occurring between October 1st of the pre-tax year and January 1st of the tax year.  R. 8:6-1(a)(4).  Discovery from the municipality is limited to the property record card.  Id.

When one party fails to provide discovery, the other party entitled to the discovery may move for an order dismissing the complaint.  R. 4:23-5(a)(1).  In this case, the City has filed such a motion after attempts to inspect the property were rebuffed by the new owner.

The first question to be resolved is whether the municipality has the burden to show a need for the inspection or whether the taxpayer needs to demonstrate that the inspection is not needed.  It goes without saying that parties may obtain relevant discovery.  R. 4:10-2(a).  Certainly, the inspection of a premises which is the subject of a tax appeal is relevant.  To be sure, the court rules specifically provide that such an inspection be allowed.  R. 8:6-1(a)(4).  Thus, no further showing of necessity by the municipality is needed.

The taxpayer argues that the assessor had a fair opportunity to inspect during the revaluation process which was completed for the 2017 tax year.  Even if the

-4-

property had been previously inspected as part of a revaluation of all properties in the municipality, that does not diminish the need to inspect. Many times, an appeal focuses upon a certain characteristic which the taxpayer believes resulted in an overstated valuation (i.e., quality of facilities, fit and finish of fixtures, usable square footage, etc.). An inspection allows an assessor to hone in on these issues in preparation for trial, and more importantly, to be more fully conversant of the property conditions for settlement discussions. To put it more plainly, if a taxpayer feels the property is overvalued, the assessor can take another look to see if any adjustment can be made short of a trial. Even if a settlement is not reached, the assessor will be fairly prepared for trial which allows the court to more thoroughly address the taxpayer's contentions. Regardless of the thoroughness of a revaluation inspection, the municipality is entitled to inspect the premises again as part of a taxpayer's appeal of the assessment.

What the taxpayer wants here is to limit the necessity for an inspection. A court can enter an order limiting discovery to protect a party from annoyance, embarrassment, oppression, or undue burden and expense. R. 4:10-3. Taxpayer has not established good cause for the necessity of such an order. In summary, the demand of the City to inspect the property is relevant and proper.

The next question is which party should have the onus to procure the inspection. The City contends that the taxpayer has the onus and the failure to

provide the inspection should result in dismissal. However, the preliminary question to this is whether an inspection can be compelled. For if it cannot be compelled, the issue then becomes who bears the detriment of the inspection not occurring.

An inspection is the one of the few types of discovery which a municipality can pursue under the small claims practice of Tax Court. R. 8:6-1(a)(4). Subject to the limitations for Tax Court matters as provided in Part VIII of the court rules, the mechanics for taking discovery are set forth in Part IV of the rules which govern civil matters. R. 8:6-1(a), R. 4:10-4 through R. 4:18-2, R. 4:22 through R. 4:25. Entry upon land for inspection and other purposes is governed by R. 4:18-1. Subsection (a)(2) of R. 4:18-1 pertains to inspection of land or other property "in possession or control of a party". Conversely, subsection (d) provides for inspection of land of non-parties.

In determining whether to compel inspections of third-party premises, the courts have seemingly taken different approaches depending on whether the inspector is a governmental agent. For example, in both Davilla v. Cont'l Can Co., 205 N.J. Super. 205 (App. Div. 1985) and Arcell v. Ashland Chemical Co., 152 N.J. Super. 471 (Law Div. 1977), our courts have allowed an inspection in a lawsuit between two private parties in which the inspector was not a governmental agent.

In both Davilla and Arcell, access to the worksites of plaintiff employees was sought to determine the extent of liability of defendants for providing alleged

-6-

dangerous products and substances.  Davilla, 205 N.J. Super. at 206.  Arcell, 152 N.J. Super. at 505.  The employers controlling the worksites were not facing liability from the employee plaintiffs in the Superior Court actions since the claims against the employers were within the jurisdiction of the workers' compensation court.  Davilla, 205 N.J. Super. at 206-07.  Arcell, 152 N.J. Super. at 487.  In Davilla, entry was allowed to a representative of the plaintiff employee to determine the manufacturer of a bandsaw used by plaintiff at the time of injury.  Davilla, 205 N.J. Super. at 207.  Likewise, in Arcell, access was permitted to assess plaintiffs' exposure to toxic substances while at the employer's worksite.  Arcell, 152 N.J. Super. at 507.

Other courts have allowed inspections of third-party premises by non-governmental witnesses to gather relevant evidence.  For example, the Court of Special Appeals of Maryland will allow under appropriate circumstances an inspection of a premises formerly owned by a defendant as part of a suit alleging exposure to lead.  Johnson v. Franklin, 115 A.3d 752, 755, 762 (Md. Ct. Spec. App. 2014).  Stokes v. 855 N. Wash. St., 784 A.2d 1142, 1143, 1150 (Md. Ct. Spec. App. 2001).  In Investors Mortgage Ins. Co. v. Dykema, 598 F. Supp. 666 (D. Or. 1984), the United States District Court for the District of Oregon allowed an appraiser to inspect the home of a third-party to determine fair market value as part of a dispute

-7-

between a mortgage lender and mortgage insurer.  Id. at 668.  The issue was whether prior appraisals, relied upon at the time of loan origination, were inflated.  Id. at 667.

In In re State in the Interest of A.B., 219 N.J. 542 (2014), a juvenile delinquency proceeding, the defense sought an inspection of a home which was both the scene of the crime and the home of the victim.  Id. at 547-48.  The inspection was not by or for the benefit of the State, but rather by and for the benefit of the accused to challenge the charge.  Ibid.  Our Supreme Court determined that the right of the accused to a fair trial and the right of the purported victim and her family's privacy must be balanced.  Id. at 547.  A fair criminal trial was found to outweigh the right of the purported victim to privacy.  Ibid.  Obviously, in a criminal or juvenile delinquency proceeding, a defendant is facing consequences of magnitude that can result in incarceration and loss of liberty.  This is unlike the case now before the court in that the taxpayer does not face any consequence of magnitude, but rather seeks to overcome the presumption of a correct tax assessment.  MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998).

The aforementioned cases involved private parties seeking entry into a premises.  The inspections were sought by private parties for private interests, and were to be conducted by private parties.  Here, regardless of whether the burden of

seeking entry falls upon the taxpayer or the municipality, the outcome sought is an inspection by a governmental official or agent.[2]

Even when an inspection is merely for purposes of a tax assessment appeal, a number of courts in other jurisdictions have recognized, with varying results, that Fourth Amendment issues arise. See, e.g., Matter of Jacobowitz v. Bd. of Assessors for Town of Cornwall, 990 N.Y.S.2d 551, 555-57 (N.Y. App. Div. 2014) (inspection of appealing owner's property denied on Fourth Amendment grounds); Matter of Yee v Town of Orangetown, 904 N.Y.S.2d 88, 94-95 (N.Y. App. Div. 2010) (same); Schlesinger v. Town of Ramapo, 807 N.Y.S.2d 865, 867-68 (N.Y. Sup. Ct. 2006) (same); Roketenetz v. Bd. of Assessors, 892 N.E.2d 363, 364 (Mass. App. Ct. 2008) (order permitting inspection of appealing owner's property not barred by Fourth Amendment); Smith v. Ayotte, 356 F. Supp. 2d 9, 16-17 (D.N.H. 2005) (unfair to allow taxpayer to block access on Fourth Amendment grounds and then appeal); Poddar v. Department of Revenue, 983 P.2d 527, 533 (Or. 1999) (Fourth Amendment issues overcome when taxpayer put value at issue); Atkinson v. Gurich, 248 P.3d 356, 358-60 (Okla. 2011) (Fourth Amendment along with statute barred inspection); MacDonald v. Town of Dover, 899 N.W.2d 303, 313-28 (Wis. 2017) (same). However, none of the decisions cited above address an inspection when the

---

[2]  Even if the City hired a private sector appraiser to conduct the inspection, the appraiser is acting as an agent of the government. See State v. Scrotsky, 39 N.J. 410, 415-16 (1963).

property has changed hands. Additionally, in some of the jurisdictions, there are statutes which limit the assessor's ability to inspect. In any event, the court has to be more circumspect in considering inspections by governmental agents since Fourth Amendment issues are implicated.

The Fourth Amendment of the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ." U.S. Const. amend IV. The Fourth Amendment then goes on to provide that "no Warrants shall issue, but upon probable cause . . ." Id. The New Jersey Constitution has similar provisions. N.J. Const. art. I, ¶ 7. Upon first glance, looking to the Fourth Amendment to resolve a tax related dispute seems out of place since most jurisprudence involving this amendment concerns criminal offenses.

However, the Fourth Amendment has deep roots in taxation. "Vivid in the memory of the newly independent Americans were those general warrants known as writs of assistance under which officers of the Crown had so bedeviled the colonists. The hated writs of assistance had given customs officials blanket authority to search where they pleased for goods imported in violation of the British tax laws." Stanford v. Texas, 379 U.S. 476, 481 (1965). In addition to hatred of the writs, there was irritation with the underlying laws for which the writs were issued. Marshall v. Barlow's, Inc., 436 U.S. 307, 310 (1978). These laws included the Stamp Act of

-10-

1765, the Townshend Revenue Act of 1767, and the tea tax of 1773. <u>Id.</u> at 310, n. 7.

"It is well settled . . . that the Fourth Amendment's protection extends beyond the sphere of criminal investigations. . ." <u>Grady v. North Carolina</u>, 135 S. Ct. 1368, 1371 (2015). "[T]he Fourth Amendment applies to searches and seizures in the civil context and may serve to resolve the legality of these governmental actions without reference to other constitutional provisions . . . ." <u>United States v. James Daniel Good Real Prop.</u>, 510 U.S. 43, 51 (1993). "If the government intrudes on a person's property, the privacy interest suffers whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards." <u>Marshall v. Barlow's, Inc.</u>, 436 U.S. at 312-313.

"The basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." <u>Carpenter v. United States</u>, 138 S. Ct. 2206, 2213 (2018) (citing <u>Camara v. Mun. Ct. of City and County of S. F.</u>, 387 U.S. 523, 528 (1967)). The sanctity of private dwellings is ordinarily afforded the most stringent Fourth Amendment protection. <u>N.J. Dep't of Envtl. Protection v. Huber</u>, 213 N.J. 338, 358 (2012) (quoting <u>United States v. Martinez-Fuerte</u>, 428 U.S. 543, 561 (1976)). However, the Fourth Amendment protects commercial buildings as well as private homes. <u>Marshall v. Barlow's, Inc.</u>, 436 U.S. at 312; <u>see</u> <u>also</u> <u>See v. Seattle</u>, 387 U.S. 541, 543 (1967).

Government inspections were dealt with by our Supreme Court most recently in Huber. Huber took title to a residential property subject to a recorded deed restriction that conditioned development on the issuance of a carefully delineated wetlands permit and transition area waiver. Id., 213 N.J. at 370. As such, Huber could not claim a full expectation of privacy to such protected lands. Ibid. As part of the statutory scheme to protect such lands, Huber's property was subject to inspection by the Department of Environmental Protection ("DEP"). Ibid. "In effect, a property owner receives the right to develop restricted land in exchange for giving the right of reasonable entry to the DEP to inspect. To be sure, this bargained-for exchange is subject to the reasonableness of the entry and search." Ibid.

The Court balanced the right of Huber to exclude the DEP against the bargained-for exchange of receiving the wetlands permit. In other words, if Huber, or his predecessor in title, did not want the DEP on the land, a permit from the DEP should not have been sought. However, the Court made clear that it was leaving for another day whether the inspection law applied to property that was either (1) not subject to a wetlands permit, (2) consisted of open fields, or (3) entry is sought in non-residential settings. Id. at 371.

In the case at hand, there is not any bargained-for exchange such as a permit that governs the relationship between the current owner (or predecessor in title such as taxpayer) and the municipality when it comes to inspection of the property. This

-12-

is in contrast with a redevelopment parcel which is subject to a long-term payment in lieu of taxes (PILOT) agreement which mandates the inclusion of a right by the municipality to inspect the property. N.J.S.A. 40A:20-9(e). This is not to say that a bargained-for exchange concept as expressed in <u>Huber</u> is a necessary prerequisite to a search, but rather that the bargained-for exchange concept does create a basis for a governmental inspection in this case.[3]

The legal foundation for <u>Huber</u> is <u>Camara</u>, the seminal United States Supreme Court decision pertaining to administrative searches or inspections by governmental officials. In <u>Camara</u>, the owner refused entry to a housing inspector for a periodic inspection. The housing inspector insisted upon entry based upon a housing ordinance. <u>Id.</u>, 387 U.S. at 525-26. While a routine inspection of the physical condition of private property may be a less hostile intrusion than the typical police officer's search for contraband, the Fourth Amendment interests at stake were not merely peripheral. <u>Id.</u> at 530.

---

[3] It must be emphasized that the court is not deciding whether an assessor has the right to inspect the property as part of a revaluation or reassessment of all or a substantial part of the properties in a given municipality. Nor is this court deciding the right of inspection when the taxpayer is still in possession or control of the property (as owner, lessee or lessor) and files a tax appeal. Rather, the court is solely considering the situation of when an appealing taxpayer no longer owns the property, and the current owner rebuffs the municipality's request to inspect.

-13-

The Court in Camara determined the Fourth Amendment standard of probable cause for allowing a non-criminal administrative inspection is formulated with an eye towards reasonableness. Id. at 537, 539. However, "there can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails." Id. at 536-37. An inspector is permitted to seek entry without a warrant, but if refused, has to obtain a warrant. Id. at 540. Health and safety considerations can form the reasonable basis for the issuance of a warrant. Id. at 538. Moreover, the passage of a time without a periodic inspection may justify the issuance of a warrant. Ibid. Once again, the court is balancing the privacy interests of citizens against the government's interests in conducting certain programs to protect or benefit the citizenry at large.

Moreover, the case here is unlike that confronting our Supreme Court in Dome Realty, Inc. v. Paterson, 83 N.J. 212 (1980). Paterson required inspection of rental apartments "immediately prior" to a new tenant moving into the premises. Id. at 240. The Court distinguished the case from Camara in that the apartments were vacant at the time of inspection, the inspector has no discretion in which dwellings are searched as the inspection only occurs on the request of the inspector and there is not a criminal investigation. Id. 240-241. Unlike Dome, the current owner of the premises is not inviting the inspection, but rather has rebuffed efforts to inspect.

An inspection by a government agent is vastly different from an inspection by a private individual. A government agent can discover violations of criminal and civil law which can lead to consequences. A government agent's inspection can impact relations and obligations to the government. For example, if upon inspection, the agent perceives improvements, steps might be available to increase the assessed value. Twp. of W. Milford v. Van Decker, 120 N.J. 354, 362 (1990). Even if the government agent is acting in good faith, it does not diminish this real and apparent concern that accompanies a request for inspection. But for an inspection, it is unlikely that the current owner's assessment will change.[4] The exposure which the current owner has to an increase upon inspection would not be imaginary or trifling.

Arguments that if the current owner has nothing to hide, they should throw their doors open to inspection are specious. Such arguments gut the Fourth Amendment for it can be applied in any number of contexts including criminal warrants. The Constitution, and the Fourth Amendment in particular, serve an important and vital purpose as a check on governmental power.

To summarize, the common thread which runs through the governmental administrative inspection cases is balancing the government's interest in the inspection versus the property owner's constitutional right in limiting governmental

---

[4] Of course, construction or destruction of improvements or another municipal-wide revaluation could affect the assessment.

intrusion.  Camara, 387 U.S. at 536-37.  In Camara, the Court indicated that "[t]he warrant procedure is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest.  But reasonableness is still the ultimate standard.  If a public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant".  Id. at 539.

But for the litigation, the City has not expressed any interest in seeking an inspection of the property.  Thus, there is not any public health or welfare concerns, or broad public policy at stake to justify an inspection.  What is left are two private interests, that of the taxpayer and that of the current owner.  The taxpayer has an interest in seeking a refund of taxes which he believes were overpaid.  The taxes on the property are approximately $14,000 per year.  It goes without the saying the refund would be somewhat smaller than $14,000 if the taxpayer was successful in establishing that the property was over-assessed.  This private interest in a refund is balanced against the current property owner's interest as guaranteed by the Fourth Amendment.  This case is unlike A.B. where there were competing constitutional interests, a fair criminal trial, versus privacy interests.  See Id., 219 N.J. at 547.  Here, the current property owner's Fourth Amendment rights outweigh the taxpayers' interest in a monetary refund.  In other words, the court would not be able to compel an inspection by virtue of the Fourth Amendment.

A question also arises as to whether the taxpayer has a due process interest in securing access to the property if such access is necessary for his case to go forward, and whether this trumps the Fourth Amendment rights of the current owner. The current owner is laboring under a tax-burden established by the same assessment which the taxpayer is contesting. The current owner could have appealed the assessment, but chose not to appeal. Certainly, the current owner has a right not to sue and be subjected to the costs, expense and also the rigors of discovery including inspection of the premises. Taxpayer cannot foist upon the current owner the burdens and risks of litigation which the current owner has not decided to undertake.

The risks of litigation to the current owner may be greater than the taxpayer risks. Taxpayer seeks a reduction for 2017. Since 2017 was a revaluation year and no counterclaim was filed, the City generally cannot seek an increase. Campbell Soup Co. v. City of Camden, 16 N.J. Tax 219, 226 (Tax 1996). However, the assessment could potentially be increased for upcoming years to reflect any perceived improvements to the property. Van Decker, 120 N.J. at 362. Thus, there is not any downside to the taxpayer appealing, but the current owner does have some risk. It is not the court's function to evaluate whether this risk is great or small. The current owner could not be compelled to effectively participate in this litigation by this court compelling an inspection.

Since an inspection cannot be compelled in this case, the question is which party should bear the detriment of an inspection not occurring. It must be remembered that as a practical matter, "local tax officials often cannot know whether a residence has undergone renovations which have increased its value without entering the residence itself." Ayotte, 356 F.Supp.2d at 16. In other words, an inspection is an important part of the tax appeal process. Without an inspection, it would not be fair to the City, or to the other taxpayers in the City who would have to make up any shortfall in tax revenues if a reduction in assessment was determined based upon limited evidence.

While it is true that an order of dismissal does not have to be entered if there is good cause for not providing discovery, being unable to compel an inspection does not constitute good cause when a taxpayer may have other avenues of relief to secure an inspection. See R. 4:23-5(a)(1) ("Unless good cause for other relief is shown, the court shall enter an order of dismissal . . ."). Since there are other avenues of relief available to taxpayer which are explained in greater detail below, the adverse consequences of not securing an inspection must fall upon taxpayer.

This court has dealt with an analogous situation when addressing the failure of a prior owner to complete a Chapter 91 request. Under Chapter 91, a commercial taxpayer is required to provide income and expense information within forty-five days, or otherwise face a bar to a tax appeal. L. 1979, c. 91 § 1. N.J.S.A. 54:4-34.

-18-

The purpose of the provision is to encourage the remittance of financial information so that the local assessor can arrive at an accurate assessment. In prior cases, the issue has arisen whether the prohibition of appeal applies to subsequent property owners when the predecessor in title failed to comply with Chapter 91. This court has determined that:

> [i]t is the obligation of a purchaser to ascertain the facts concerning the property tax and the property tax assessment on the property that it proposes to purchase and to protect itself in its agreement with the seller as to any rights that it may wish to assert with respect to the property tax.
>
> [ADP of New Jersey, Inc. v. Parsippany-Troy Hills Tp., 14 N.J. Tax 372, 378-79 (Tax 1994); 975 Holdings, LLC v. City of Egg Harbor, 30 N.J. Tax 124, 131-32 (Tax 2017).]

Likewise, it is the obligation of a seller to protect itself in an agreement with a purchaser as to any rights it may wish to assert with regard to inspection of the property for tax appeal purposes. In other words, the seller can bargain with the purchaser for inspection of the property. Certainly, such a request may have to be supported by adequate consideration. There is not any evidence that the current owner agreed to allow an inspection so that the taxpayer could continue his tax appeal. Parenthetically, if the court could compel an inspection, it would give the taxpayer something beyond what was bargained for with the current owner.

There may be a multitude of reasons why the current owner opposes an inspection. As already stated, he may not agree with the litigation or may be fearful his assessment will increase. The current property owner may not be satisfied with the property and may well have asked the taxpayer to address certain concerns. These are broad unsupported allegations from both sides as to the current owner's rationale. Those concerns can certainly be addressed through negotiations to allow an inspection, but is not for the court to speculate or wander into such negotiations. It is none of the court's concern, nor should the court inject itself into such a dispute. It is better left to the parties to resolve, and to determine the appropriate consideration for any inspection (i.e., indemnification if assessment increases, agreement to repair, percentage of any tax refund for 2017, etc.)

Placing the burden on the taxpayer to secure the inspection is appropriate for one other reason. It prevents mischief of a taxpayer in thwarting an inspection through a transfer of the property. If the burden was placed on the municipality to secure the inspection, a taxpayer could easily avoid such inspection by conveying the property to a related entity and then claiming that the inspection is not possible. Moreover, even in a legitimate transaction, friendly buyers and sellers may perceive a litigational advantage in thwarting an inspection to put the municipality at a disadvantage. Cf., Ayotte, 356 F.Supp.2d at 17 ("Allowing a taxpayer to prevent an inspection of his or her home absent a warrant during the appraisal process and

then to challenge the result of that process through abatement proceedings would adversely impact property tax receipts."). A reduction in prior years may carry forward and inure to the benefit of a new owner as well. By placing the onus on the appealing taxpayer with the sanction of dismissal protects against such subterfuge.

The matter is dismissed without prejudice. R. 4:23-5(a)(1). The taxpayer can arrange an inspection and apply for restoration of the case. Id. Certainly, the taxpayer can reach out to the current owner and see if he can reach an agreement as to an inspection. The court is not going to wander in to the thicket of trying to set the appropriate value or parameters of such entry. The taxpayer and current owner are free to reach what they consider to be a fair and mutual bargain as to access, or if the current owner so desires, no access at all.

## IV. CONCLUSION.

For the reasons stated in this opinion, Defendant's Motion to Dismiss Plaintiff's Complaint is GRANTED.